Helen K. Fleming, Appellant, v. Matthew J. Gannon et al., Appellees.

Gen. No. 35,768.

164

Opinion filed June 28, 1932.

Joseph G. Sheldon, for appellant.

No appearance for appellees.

Mr. Presiding Justice Kerner delivered the opinion of the court.

This is an action brought by plaintiff, Helen K. Fleming, against the defendants, Matthew J. Gannon, Della M. Gannon and Bessie Gannon, to recover $6,305.75 and interest on certain real estate bonds executed by the defendants. Tried before the court without a jury. Finding and judgment in favor of defendants, from which the plaintiff appealed. We are not favored with the aid or assistance of a brief on behalf of the defendants.

The undisputed facts are that the bonds sued upon were a part of a $50,000 bond issue evidenced by 110

bonds, payable to bearer, executed by the defendants, the payment of which was secured by their trust deed to Cosmopolitan State Bank, as trustee, conveying certain real estate, in which trust deed the grantors (defendants) agreed that if the time of payment of said bonds be extended by the holder thereof for any time, they (the grantors) shall be held thereby to consent to such extension and shall notwithstanding such extension continue liable thereon to the holder thereof, and shall pay the same at the time mentioned in such extension agreement. On the face of each bond appears the following: ''The liability of the undersigned hereon shall, under all circumstances whatsoever, continue in its original form until the principal and interest are paid in full.'' September 23, 1925, the defendants by their warranty deed conveyed all their title in said real estate to Rade Vojvodich and Stefanie Vojvodich, subject to the trust deed securing said bond issue of $50,000 pursuant to a contract between the defendants and said Rade and Stefanie Vojvodich in which it is recited that the defendants agree to convey said real estate to Rade and Stefanie Vojvodich for the consideration of $88,000 subject to the trust deed for $50,000, which said Rade and Stefanie Vojvodich agree to assume and pay when due. April 15, 1929, bonds numbered 36 to 60 matured and the then holders of the bonds presented them for payment at the Cosmopolitan State Bank and received the money (principal and interest) due thereon, but the Cosmopolitan State Bank did not cancel or mark said bonds ''paid''; thereafter between March 5, 1929, and November 22, 1929, without notice to or consent of the defendants, the Cosmopolitan State Bank sold these bonds and interest coupons to the Capital Trust Company, a corporation, and that company agreed in writing to subordinate the lien of the indebtedness evidenced by said interest coupons and bonds to the lien of bonds numbered 61 to

110, both inclusive; thereafter the Capital Trust Company delivered said bonds and interest coupons to the Calumet National Bank, a corporation. The Calumet National Bank sold these bonds and interest coupons on December 31, 1930, and possession was delivered to plaintiff, the purchase price therefor being paid by one Otto C. Jarmuth, who was then the legal owner of the real estate.

In the trial court it was the contention of the defendants, and the court held that by reason of the fact that Rade and Stefanie Vojvodich assumed and agreed to pay the bonds and interest coupons sued on, their promise created a principal obligation, and that the defendants as maker of the bonds thereafter sustained the relation of surety only, and that the subsequent agreement between the Capital Trust Company and the Cosmopolitan State Bank subordinating the lien of the bonds and interest coupons without the knowledge and consent of the defendants, released the defendants from all personal liability thereon. We are of the opinion the trial court was in error in so holding. The defendants were the makers of the bonds, and as such engaged that they would pay the bonds according to their tenor. (Par. 214, sec. 191, ch. 98, Cahill's Illinois Revised Stats. 1931, Negotiable Instruments Act.) By par. 140, sec. 118 of the Negotiable Instruments Act, "A negotiable instrument is discharged: 1. By payment in due course by or on behalf of the principal debtor. 2. By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation. 3. By the intentional cancellation thereof by the holder. 4. When the principal debtor becomes the holder of the instrument at or after maturity in his own right." By par. 141, sec. 119, of the same act, "A person secondarily liable on the instrument is discharged: 1. By an Act which discharges the instrument. 2. By the intentional cancel-

lation of his signature by the holder. 3. By a valid tender of payment made by a prior party. 4. By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved, or unless the principal debtor be an accommodating party. 5. By an agreement in favor of the principal debtor binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent prior or subsequent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved, or unless the principal debtor be an accommodating party.''

It is clear the act specifies how the persons primarily liable may be discharged, and the several ways in which persons secondarily liable may be discharged. Subordinating the lien of the indebtedness evidenced by the bonds and interest coupons sued on in the instant case without the knowledge and consent of the defendants, even if it be conceded that the defendants are secondarily liable, is not among them. There was nothing done with the bonds and interest coupons after they had been subordinated which caused the defendants to be released from the payment thereof. The bonds and coupons were never discharged; the signatures of the makers were not canceled by the holders of the bonds; no valid tender of payment has been made; the principal debtors have never been released and there was no agreement binding upon the holder to extend the time of payment or to postpone the owner's rights to enforce the payment of the bonds, with or without the consent of the defendants. There was no extension granted of the time of payment, and even if there had been, the defendants would not have been released from liability in view of the language of the bond and trust deed. (*Schrader v. Heflebower,* 243 Ill. App. 139.)

It was also contended by the defendants that plaintiff could not recover because she had paid nothing for the bonds and interest coupons, they having been purchased and paid for by Otto C. Jarmuth. There is no merit in this contention. The evidence discloses that the plaintiff is the legal holder of the bonds. Her possession of the bonds and coupons is prima facie evidence of that fact. (*Ewen v. Templeton,* 148 Ill. App. 46; *Hoff v. Dougherty,* 243 Ill. App. 159, 160, and cases cited.)

It is also contended by defendants that by the acquisition of the bonds and coupons in the ownership of the property by the Capital Trust Company the bonds were discharged; in other words, that there was a merger. This contention was not sustainable on the record for several reasons. There is no evidence that the Capital Trust Company ever acquired the title to the real estate and the testimony shows clearly an intention on the part of everyone who handled the bonds to retain them in their uncanceled condition, and to keep intact the liability of the makers. The question of merger of interest is always a question of intention. (*Security Title & Trust Co. v. Schlender,* 190 Ill. 609, 613; *Clark v. Glos,* 180 Ill. 556, 565; *Central Trust Co. v. Calumet Co.,* 260 Ill. App. 410, 423.)

After a careful examination of the entire record we have reached the conclusion that justice will be best served by a retrial of the case. The judgment of the municipal court is reversed and the cause remanded.

*Reversed and remanded.*

SCANLAN and GRIDLEY, JJ., concur.