HOWARD BOLTZ, Petitioner-Appellant, v. ESTATE OF WILLIS REQUA BRYANT, Respondent-Appellee.

First District (4th Division)  No. 88—0005

Opinion filed September 8, 1988.—Modified on denial of rehearing November 17, 1988.

Carole J. Boltz, of Lincolnshire, for appellant.

Tenney & Bentley, of Chicago (Edward Eshoo, Jr., of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Howard Boltz, petitioner, brought an action to recover damages for wrongful issuance of an injunction pursuant to section 11—110 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 11—110). In addition, he seeks an award of attorney fees as sanctions under section 2—611 of the Code because of the respondent guardian's allegedly wasteful and frivolous litigation.

The instant appeal arises out of a transaction in 1985 in which Boltz loaned money to Karl Chapman, who was the nurse of Willis Requa Bryant, now deceased. As collateral for the loan, Chapman gave Boltz certain bearer coupons that were owned by Bryant. Bryant had given written authorization to Chapman to use the interest coupons as collateral for the loan.

The guardian of Bryant's estate obtained a temporary restraining order, without notice. This effectively froze the bearer coupons, which had been deposited with a bank. The guardian also obtained a preliminary injunction, without notice to Boltz, which prevented Boltz from possessing the coupons as he was entitled to under the loan transaction. Boltz moved in the trial court to dissolve or vacate the injunction, and the guardian filed a citation against Boltz to recover the coupons as assets of the estate. Upon the stipulation of the parties, the court granted the motion to dissolve the injunction before the trial on the citation. The trial court ultimately found that Boltz was entitled to possession of the coupons and ordered their release to him. The court denied, however, Boltz' requests for damages under section 11—110 and for attorney fees under section 2—611.

On appeal, Boltz contends that the trial court erred because the injunction was improperly issued and it was dissolved upon his application before trial on the merits. Accordingly, he contends he satisfied the requisites of section 11—110 of the Code of Civil Procedure. He claims attorney fee sanctions were improperly denied because the guardian made false statements and raised spurious defenses, knowing that they were false and lacking in legal foundation.

We reverse in part, affirm in part, and remand for a hearing on Boltz' damages.

BACKGROUND

In June 1985 a business acquaintance of Boltz asked him to lend money to Karl Winston Chapman, a/k/a Trevor Stuart Hamilton (Chapman). At the time, Chapman was employed by a nursing service that was responsible for the daily care of Willis Bryant, then 88 years old. Bryant owned a number of bearer bonds with attached interest coupons.

Chapman told Boltz that he would use the proceeds from Boltz' loan as earnest money for an option to purchase real estate for the Trevor Corporation. As collateral for the loan, Boltz was to receive 184 interest coupons with an aggregate redemption value of over $37,000. These coupons were detached from Bryant's bearer bonds issued by the Illinois Housing Development Authority and the Puerto

Rico Water Resources Authority. The coupons were redeemable in four groups of varying amounts, coming due July 1, 1985, January 1, 1986, July 1, 1987, and January 1, 1988. According to the terms of Boltz' loan to Chapman, Boltz would redeem the coupons on their due dates if the loan was not repaid on schedule.

Before Boltz entered into this loan transaction, Chapman showed him a notarized document dated June 6, 1985, which on its face authorized the use of these negotiable instruments as collateral. The document also provided that Trevor Corporation "would be responsible for the repayment of any loans derived as a result of the use of the aforestated bonds as collateral." The signature on the document was that of Willis Requa Bryant, the owner of the bonds. At the time of the transaction, Bryant had not been adjudicated a disabled person.

On June 7, R. Ford Dallmeyer was appointed temporary guardian of Bryant's estate and person, based on his discovery of a $20,000 check issued to Chapman and entries made to Bryant's safe deposit box in the spring of 1985, which indicated that a substantial number of municipal bonds had been removed from the box.

On June 12, 1985, Boltz and Chapman met with an officer in the trust department of the First National Bank of Chicago to determine whether the coupons could be submitted for redemption. The bank officer found that they could and suggested that the bank hold the coupons that were due on July 1, 1985. If they were not redeemed before their due date, the bank would then deposit them in Boltz' account. Boltz agreed.

On June 28, 1985, Dallmeyer, as temporary guardian for Bryant, obtained a temporary restraining order (TRO), without notice or bond, against all issuers, trustees, and paying agents on the coupons, enjoining them from paying or delivering possession of the bearer interest coupons in question. The petition alleged that Chapman had wrongfully removed the coupons from Bryant's possession, that there was no adequate remedy at law and that Bryant's potential loss would be "irreparable" if the coupons were paid out. Attached to this petition was a list of paying agents, trustees or issuers (paying agents), any one of whom was empowered to pay the coupons upon presentment. Although these names were thus available, the guardian did not give notice of the petition to any of the paying agents.

On July 2, 1985, the TRO was converted to a preliminary injunction at an *ex parte* hearing. Notice was sent to Chapman, but not to Boltz or any of the paying agents who were listed on the bonds. The preliminary injunction was not based on new factual or evidentiary

matter. Writs of injunction were then served upon the paying agents, including the First National Bank of Chicago.[1]

On July 15, 1985, Boltz learned that the First National Bank could not pay out on the bearer coupons that were due on July 1, 1985, because of the injunction. Boltz retained counsel, who learned that the State's Attorney had filed charges against Chapman at the behest of Bryant's guardian and had requested that all coupons be seized as evidence.[2] In August 1986, Chapman was acquitted on all charges.

After unsuccessful settlement negotiations between Boltz and the Northern Trust Company (which had been appointed guardian on January 17, 1986), Boltz was given leave to intervene in the probate injunction proceedings as a necessary party and to seek dissolution of the injunction. Boltz intervened on June 3, 1986.

The guardian was initially ordered to file a responsive pleading on July 1, 1986. In a later order, the guardian was given until September 16. It did not file a response until November 21, 1986. The court then set several status dates, while the parties were engaged in settlement negotiations.

After a breakdown in negotiations, Boltz renewed his request for a ruling on his motion to dissolve the injunction. The court set April 27, 1987, as the hearing date. Before that date the parties filed trial memoranda and sought to clarify the issues and pleadings. Boltz filed a motion for damages on April 16, 1987. On April 27, 1987, the court stated its inclination to rule in favor of Boltz on his motion to vacate the injunction, but then allowed the guardian additional time to respond and reset the hearing to May 29, 1987. The order recited the material issue as "whether or not a preliminary injunction should be vacated or dissolved."

The guardian filed a response on May 6. On May 19, 1987, the guardian filed a two-count amended petition for mandatory injunctive

---

[1]The guardian had previously filed a petition for injunctive relief that would prevent the payment or transfer of certain bonds in the face amount of approximately $400,000, which the guardian believed had been improperly removed from Bryant's safe deposit box. On June 13, 1985, the probate court entered an *ex parte* TRO against Harris Bank, to whom Chapman had given the bonds for authentication. On June 20, 1985, the guardian successfully moved to convert the TRO into a preliminary injunction, against without notice. This injunction was also issued without bond. Because Chapman failed to appear at the final hearing, summons having been served, the estate recovered these bonds by default judgment.

[2]In March 1986, Boltz' attorney obtained the coupons from the State's Attorney to be held in escrow pending the conclusion of the prosecution. The coupons in the possession of First National Bank, however, remained subject to the injunction.

relief and issuance of a citation to recover assets. The petition characterized the potential dissolution of the previously entered injunction as a "technicality" that would cause irreparable harm. On May 22, 1987, the court granted the guardian's motion for leave to file the amended pleading and to set the hearing on the guardian's amended pleading on the same date as the motion to dissolve, May 29. On that date, Boltz' counsel, who had been unable to be present for the May 22 hearing and had sent a substitute attorney to obtain a continuance, contested the entry of this order, particularly because it set the hearing on the guardian's amended claims before the hearing on Boltz' motion to dissolve the preliminary injunction. The court denied Boltz' oral motion to vacate the May 22 order and ordered him to file a written motion. Subsequently, Boltz obtained an agreement with the guardian's counsel to allow the court to hear Boltz' motion first and accordingly withdrew his motion to vacate the May 22 order.

On the new hearing date, June 11, 1987, counsel for Boltz and the guardian advised the court of a stipulation they had entered into, which included the provision that Boltz' motion was to be heard first. Despite his admission that the stipulation was accurate, the guardian's attorney attempted to persuade the court to proceed to the "merits" first, which would moot the motion to dissolve the injunction. After the court indicated its agreement with the guardian's position, Boltz and the guardian finally stipulated that the court would "grant the motion to dissolve," stay that ruling, and proceed on the citation.

After trial, the court ruled that Boltz was the rightful possessor of the coupons under the loan transaction and that he was a *bona fide* purchaser. The court found that the testimony of the temporary guardian, who had started the injunction proceedings, lacked credibility. The court ordered that the coupons be returned to Boltz on September 29, 1987, more than two years after the loan transaction.

OPINION

I

We are first asked to determine whether the trial court erred in denying Boltz damages under section 11—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 11—110). This provision states in relevant part:

"In all cases where a temporary restraining order or a

preliminary injunction is dissolved by the circuit court or by the reviewing court, the circuit court, after the dissolution of the temporary restraining order or preliminary injunction, and before finally disposing of the action *shall, upon the party claiming damages by reason of such temporary restraining order or preliminary injunction, filing a petition under oath* setting forth the nature and amount of damages suffered, determine and enter judgment in favor of the party who was injured by such temporary restraining order or preliminary injunction for the damages which the party suffered as a result thereof, which judgment may be enforced as a result thereof \*\*\*." (Emphasis added.)

This statute is to be strictly construed and damages are to be awarded under it "only if the preliminary injunction has been dissolved before the case is disposed of on the merits, and *thus adjudicated to have been wrongfully issued*." (Emphasis added.) (*Emerson Electric Co. v. Sherman* (1986), 150 Ill. App. 3d 832, 836, 502 N.E.2d 414, 417, citing *Meyer v. Marshall* (1976), 62 Ill. 2d 435, 439, 343 N.E.2d 479.) In *Emerson*, the preliminary injunction had expired on its own terms pending the appeal, rendering the case moot. The appellants argued that the court should nevertheless consider the merits because if the injunction were improperly granted, they would be entitled to damages under section 11—110. In rejecting this argument, the court held that defendants' failure to file a motion to dissolve the injunction defeated their claim because even if the injunction had been improperly issued, such a holding would not result in dissolving the already defunct injunction. The court noted that the "key to the preservation of the question of damages for short-term preliminary injunctions lies in the *timely filing* in the trial court of a motion to dissolve the injunction." (Emphasis added.) *Emerson Electric Co. v. Sherman* (1986), 150 Ill. App. 3d 832, 836, 505 N.E.2d 414, 417.

In the pending case, Boltz filed his motion to dissolve the preliminary injunction contemporaneously with his petition to intervene, in July 1986. He never abandoned his attempt to have the injunction dissolved or vacated and on several occasions urged the court to rule on the motion. The guardian's conduct was, at least in part, responsible for the delay in the disposition of the motion. Then, too, the trial court permitted several continuances and allowed the guardian to add theories of defense and amended pleadings. The record reflects that the rather simple motion to dissolve the preliminary injunction, premised on lack of notice as well as other deficiences, was derailed

on several occasions.[3]

We believe that the motion to dissolve the injunction should have been heard first, before any new or amended filings by the guardian were entertained. The merits of a motion to dissolve a preliminary injunction are clearly distinct from the merits of the underlying controversy—in this case, who was entitled to the coupons. Regardless of the propriety of injunctive relief, the ownership issue could have proceeded by citation or other action. On the other hand, if Boltz were prevented from obtaining a ruling on the motion to dissolve until *after* the citation proceeding (which the guardian strongly urged to the court), Boltz would lose his claim for damages for wrongful issuance of injunction.

The guardian argues that the court did not dissolve the injunction, the parties did. Therefore, it was not a judicially determined dissolution and is insufficient to fulfill the statutory requisites. For support, the guardian relies primarily on *Sackett v. City of Morris* (1909), 149 Ill. App. 152, 165, in which the court held that the dissolution of a temporary injunction must be "by order of court, or upon the failure of complainant to prosecute his suit." In *Sackett,* the court cited cases which stood for the proposition that an action for damages upon the wrongful issuance of an injunction cannot be maintained if the injunction is voluntarily dissolved by the parties upon a

---

[3] For example, there were several pretrial discussions with the court to clarify the issues, the primary one being Boltz' right to a hearing on the motion to dissolve or vacate the preliminary injunction. Although the guardian's law firm had filed a response to the motion and raised other matters, a partner new to the case, Richard Cochran, stepped in on April 27, 1987, to assert for the first time that Boltz had never filed a proper motion to vacate (the initial petition having been brought under the wrong section of the Code) and that the only pleading before the court was the guardian's motion for mandatory injunction. Mr. Cochran characterized Boltz' attempt to vacate based on lack of notice as a "technicality" and claimed that if it were granted, he would prepare another TRO immediately. The trial court agreed with Boltz that the court had to rule on his motion to preserve his right to appeal and, after further discussion, stated "I am going to rule in [Boltz'] favor." For reasons not altogether clear the court then granted the guardian additional time to respond. Thereafter, the guardian filed amended pleadings adding the citation proceeding and a new or revised injunction count. When the matters were finally set for determination on June 11, 1987, the parties brought to court a stipulation that the motion to dissolve would be heard first. Counsel for the guardian, Edward Eshoo, then argued to the court that they should reach the merits of the underlying case first because, "As a practical matter, if they win the injunction is moot. Those issues are moot. *** If you decide that [Boltz] is the proper owner, this injunctive stuff is rendered all moot. That's why I want to get to the merits right away." Finally, the guardian agreed that the court could grant the motion to dissolve, if the dissolution would be stayed pending the outcome of the citation trial.

settlement agreement. In such cases, the plaintiff cannot fairly expect damages for wrongful issuance of the injunction because the parties have compromised and settled the dispute to their satisfaction.

■ We cannot agree with the guardian that *Sackett* is applicable to the pending case, since the record clearly reveals that the dissolution of the injunction was not pursuant to a settlement of the controversy. On the contrary, the failure of settlement negotiations led Boltz to renew and pursue his motion to dissolve the injunction, which motion he never abandoned in any way. After the trial court had indicated that it was inclined to grant Boltz' motion in April 1987, the guardian filed additional pleadings, including the citation proceeding, which the guardian attempted to have heard prior to the motion to dissolve the injunction. Despite its agreement to allow the motion to dissolve to be heard first, the guardian later reneged and attempted to persuade the court to take the citation first, stating that "if [Boltz] wins, we don't need to dissolve the injunction." It would thereby become moot. In such a case, of course, Boltz' claim for damages would be defeated because the injunction would not have been dissolved prior to a determination of the merits.

We find little merit to the guardian's position on this issue. Boltz would have obtained a clear ruling on the motion to dissolve if the case had not become bogged down in a procedural quagmire. How and why this state of the record came about is largely irrelevant to the question of whether Boltz had the right to have his motion to dissolve heard first. Without ascribing bad-faith motives to the guardian, we note that the effect of its position was to curtail Boltz' right to have the injunction dissolved before the hearing on the merits. The guardian thus contributed to the very situation that it now argues precludes Boltz from recovering damages under section 11—110.

In any event, the guardian's attorney agreed to *the court's* granting of the motion to dissolve the injunction. Hence, the guardian was *not* contesting the motion to dissolve the injunction. It thereby waived any defenses to the motion and consented to the court's entry of that order. (See *Landis v. Wolf* (1903), 206 Ill. 392 (dismissal of the pleading and the court's dissolution of the injunction were conclusive that the injunction was wrongfully issued); *Emerson Electric Co. v. Sherman* (1986), 150 Ill. App. 3d 832, 505 N.E.2d 414 (dissolution of preliminary injunction before determination on merits of underlying controversy is adjudication of its wrongful issuance).) Accordingly, the guardian cannot now attack the court's granting of the motion to dissolve.

## II

■ Having concluded that the court granted Boltz' motion to dissolve the injunction, we must next consider the related question of whether the issuance of the injunction was wrongful. As *Landis* and *Emerson Electric* indicate, the court's dissolution of an injunction generally means that it was improperly issued or it would not have been dissolved. We believe that this rationale extends to the dissolution in the pending case, because the guardian's consent to the entry of the order waived any defenses to the dissolution and, therefore, the dissolution operated as an adjudication of the merits of Boltz' motion. Nevertheless, because the trial court did not make a specific finding that the injunction was wrongful (and in fact refused to enter a finding to that effect on Boltz' motion for damages under section 11—110), we will determine this issue on the record before us. This entails an examination of the motion papers and the effect of the lack of notice to the restrained parties.

■ While TROs can be entered without notice, this practice is not to be encouraged. "The law does not in any case favor the granting of injunctive relief without notice *** [and] no [presumption of validity] is indulged in favor of injunctive relief granted without notice." (*Bettendorf-Stanford Bakery Equipment Co. v. International Union of United Automobile, Aerospace & Agricultural Implement Workers, Local Union No. 1906* (1977), 49 Ill. App. 3d 20, 24, 363 N.E.2d 867, 870.) This is especially significant in the pending case, where proper notice of the preliminary injunction hearing on July 2, 1985, may have averted two years of litigation because the validity of injunctive relief could have been immediately tested. Instead, the injunction remained in effect during settlement negotiations and also while the court continued Boltz' requests for hearing on the motion to vacate. " 'The policy of the law is that no one shall be deprived of any substantial right even temporarily without first being heard in his own defense.' " (*Bettendorf-Stanford Bakery Equipment Co. v. International Union of United Automobile, Aerospace & Agricultural Implement Workers, Local Union No. 1906* (1977), 49 Ill. App. 3d 20, 24, 363 N.E.2d 867, 870, quoting *People ex rel. Thrasher v. Eisenberg* (1916), 202 Ill. App. 63, 67-68.) The guardian did not explain how notifying the paying agents, who were adverse parties in the sense that the injunction was being entered directly against them, would have jeopardized the preservation of Bryant's alleged claim to the coupons.

While the lack of notice was Boltz' primary ground for vacating the injunction, he further raised deficiencies in the verified petition

for injunction, which failed to set forth sufficient *facts* in support. The irreparable nature of the alleged harm and the inadequacy of a legal remedy were simply stated as conclusions.

Injunctive relief is a drastic remedy that cannot be properly granted unless all of the requisites are satisfied. "[W]here the complaint is inherently defective and does not support the injunctive relief sought, and the temporary injunction is dissolved, there is a *legal presumption that it was wrongfully issued.*" (Emphasis added.) (*Illinois Funeral Home Owners Association v. Cemetery Workers, Greens Attendants & Institutional Employees' Union, Local No. 106* (1958), 19 Ill. App. 2d 375, 378, 153 N.E.2d 865, 866.) Here, it appears that one person, Bryant's temporary guardian, assumed that Chapman was defrauding his charge. While his initial suspicion may have justified his initiating the actions he did, he never was able to establish sufficient proof. The criminal prosecution, moreover, ended in acquittal of Chapman, with the court concluding that no evidence of theft or forgery had been presented. The guardian nevertheless pursued its claim against Boltz, arguing among other things that he had constructive notice of a defect in the instruments, even after discovery failed to adduce substantiating evidence. After the citation trial, the court specifically found that the guardian's testimony lacked credibility.

We conclude that the injunction was in fact wrongfully issued. An injunction "is an extraordinary remedy, the use of which is applicable only to situations where an extreme emergency exists and serious harm would result in the absence of the injunction." (*Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386, 483 N.E.2d 1271, 1277.) The bearer interest coupons, because of their negotiability, were essentially like cash. Injunctive relief is simply inappropriate. The policies of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 1—101 *et seq.*), in fact, would be seriously hampered if freely negotiable instruments such as the bearer coupons in question could be easily frozen by *ex parte* injunctions. As a holder in due course, Boltz took the coupons free of most claims and defenses, including that of theft. (Ill. Rev. Stat. 1985, ch. 26, par. 3—305; see *Douglass v. Wones* (1983), 120 Ill. App. 3d 36, 458 N.E.2d 514 (stolen instrument); see also *Fleming v. Gannon* (1932), 267 Ill. App. 163 (plaintiff's possession of bearer bond's interest coupons was *prima facie* evidence that plaintiff was the legal holder thereof).) Nothing on the face of the instrument revealed any defect, and if in fact the guardian could have established that Boltz knowingly accepted stolen coupons, Boltz would remain liable in damages

for conversion of estate assets, in which case the guardian would have an adequate legal remedy.

We conclude that Boltz has established his entitlement to damages pursuant to section 11—110 of the Code.

### III

Boltz raises an additional base for the award of attorney fees, section 2—611 of the Code of Civil Procedure. (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.) Under previous versions of the statute, the sanction could be imposed if the pleading in question contained untrue statements or denials made without reasonable cause. (*E.g., Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 383 N.E.2d 185.) Recently, section 2—611 was amended to give it more teeth and to conform it more nearly to the Federal Rule 11 standard of requiring the party and attorney filing the pleading to affirmatively investigate the facts and law. See Ill. Ann. Stat., ch. 110, par. 2—611, Historical and Practice Notes, at 18-19 (Smith-Hurd Supp. 1988); *Brown v. Federation of State Medical Boards of the United States* (7th Cir. 1987), 830 F.2d 1429.

Boltz lists the numerous instances in which the guardian allegedly made untrue statements or filed frivolous pleadings, starting with the untrue and conclusory allegations upon which the *ex parte* injunction was based. Boltz states, for example, that the guardian knew of the written authorization permitting Chapman to use the bonds and coupons for collateral, but failed to notify Chapman or the banks involved that an injunction was sought. The guardian's complaint for injunctive relief failed to factually aver the elements for injunctive relief.

After the injunction was issued, the guardian persisted in claiming as estate assets the coupons that Boltz had taken as a *bona fide* purchaser, even after the criminal proceedings against Chapman resulted in acquittal and discovery had failed to elicit any evidence that Boltz had conspired with Chapman to defraud Bryant, or that Boltz had notice of a defect in the instrument, or that Boltz knew that Bryant was incompetent.

Boltz further charges: the guardian acted improperly in telling the court in April 1987 that the only pleadings properly before the court were the guardian's pleadings for injunction; the guardian attempted to block the ruling on the motion to dissolve the injunction by raising irrelevant procedural arguments; the guardian raised ill-founded legal arguments, such as characterizing the loan as a secured transaction under article 9 of the Uniform Commercial Code,

which was breached when Boltz failed to redeem the coupons without first notifying Chapman; and the guardian showed bad faith in arguing that the motion to dissolve was stale because the court had not ruled upon it while the settlement discussions were pending. Further, the guardian filed amended pleadings for injunctive relief on the new grounds of breach of Chapman's fiduciary duty and that Boltz knew or should have known that Chapman was acting on his own behalf instead of Bryant's. This, argues Boltz, was not supported by fact or affidavit and ignores the lack of evidence that Boltz knew of any wrongdoing or any problem with the coupons. Moreover, the guardian's repeated attempts to persuade the court to rule on the ownership issue before reaching the motion to dissolve were spurred by the specter of damages that would ensue if the court dissolved the injunction as being wrongfully issued.

The above listing is an abbreviated one; however, it sufficiently suggests that a number of the guardian's factual and legal positions were ill-founded. Nevertheless, we hesitate to fault the guardian for its attempt to zealously advocate its client's interests. We need not decide whether the trial court erred in failing to award sanctions under section 2—611, moreover, because of our holding that Boltz is entitled to recover damages under section 11—110. Such damages include attorney fees (*Emerson Electric Co. v. Sherman* (1986), 150 Ill. App. 3d 832, 502 N.E.2d 414), and Boltz would not be entitled to double damages in any event. While the scope of the attorney fee award under the two sections may differ in some cases, we believe that Boltz' recovery under either section would be substantially the same, since the wrongful issuance of the injunction and subsequent attempts to dissolve it occasioned much of Boltz' attorney fees.

For the foregoing reasons, we reverse the judgment of the trial court insofar as it denied damages under section 11—110 and remand for further proceedings in accordance with this opinion.

Reversed in part; affirmed in part and remanded.

JIGANTI, P.J., and JOHNSON, J., concur.