G&J PARKING COMPANY, Plaintiff-Appellee, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 86—2515, 86—2982 cons.

Opinion filed March 28, 1988.

QUINLAN, J., specially concurring.

Judson H. Miner, Corporation Counsel, of Chicago (Ruth M. Moscovitch and Maureen Jeannette Kelly, Assistant Corporation Counsel, of counsel), for appellants.

Kaplan, Sorosky & Anderson, Ltd., and Wolfe & Polovin, both of Chicago (James L. Kaplan, Kathleen Boyle Anderson, and Richard A. Wolfe, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

The plaintiff, G&J Parking, Inc. (G&J), pursuant to Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), appeals the dismissal of count I of its complaint which sought a preliminary injunction against the defendants. Defendants, the City of Chicago (city), a municipal corporation, and Judson Miner (Miner), acting corporation counsel of the City of Chicago, pursuant to Supreme Court Rule 307 (107 Ill. 2d R. 307), appeal the circuit court's order granting a temporary restraining order (TRO) in favor of the plaintiff and the court's subsequent refusal to vacate that order.

For the following reasons we reverse the decision of the trial court in part and remand for further proceedings.

The plaintiff had managed six city-owned parking lots located throughout the City of Chicago pursuant to an ordinance agreement dated January 5, 1970. The agreement was for a term of one year beginning on January 1 and ending on December 31 and had been renewed annually by the parties.

On October 30, 1985, the city's commissioner of streets and sanitation sent a notice to G&J informing it that its operator's agreement would terminate on December 31, 1985, and that it was required to vacate the premises by that date. The city decided to suspend these termination orders, however, and G&J continued to manage and operate the six parking facilities. The city maintains that from that time, G&J managed the lots on a month-to-month basis. G&J contends that it was still managing the lots on a year-to-year basis and that the term expired on December 31, 1986, pursuant to the agreement.

On July 16, 1986, Judson Miner sent a letter to G&J stating that its agreement with the city for the management of the parking facilities was being terminated due to G&J's violation of the terms of the ordinance agreement and requiring G&J to vacate the premises by August 31, 1986. After G&J received this letter, counsel for both parties met regarding the termination of the contract.

At this meeting, which was held on August 27, 1986, G&J was informed by an assistant corporation counsel of the City of Chicago that August 31, 1986, was an absolute deadline and further advised G&J that the city intended to use any means available to it to remove G&J, its records and its personnel from the parking facilities.

The next day, August 28, 1986, G&J filed a verified complaint in two counts against the City of Chicago and Judson Miner seeking: (1) a temporary restraining order or, in the alternative, a preliminary injunction enjoining the city from either terminating or shortening the term of the agreement and from removing G&J from the parking facilities it was managing (count I); and (2) an accounting (count II).

An *ex parte* hearing was held on August 29, 1986, at the conclusion of which the circuit court entered a TRO enjoining the city from utilizing its police power or its police department to remove G&J from the parking facilities in question. On G&J's representation that it did not possess sufficient funds to post bond, bond was waived.

The defendants filed a motion on September 3, 1986, to dissolve the TRO. The court heard argument on the motion on September 8, 1986, denied the motion, and extended the TRO through September 15, 1986.

On September 10, 1986, the city filed a notice of interlocutory appeal pursuant to Supreme Court Rule 307, appealing the court's order of August 29, 1986, granting the TRO and the order of September 8, 1986, denying the defendants' motion to dissolve the TRO.

On September 15, 1986, the court continued the plaintiff's motion for a preliminary injunction to September 29, 1986. At that time the TRO dissolved by its terms, and the plaintiff filed an emergency motion in the appellate court to extend the TRO. On September 16, 1986, we denied that motion.

On September 17, 1986, G&J brought another motion seeking a TRO. The motion was entered by the circuit court and continued for hearing to September 29, 1986.

In the interim, on September 19, 1986, G&J brought still another emergency motion for the entry of a TRO based on the city's erection of two concrete poles with a chain stretched across them in front of the entrance of one of the parking garages. Based on the city's representation that the chain would not obstruct ingress or egress from the garage, the court entered an order requiring the defendants to maintain the status quo and resetting the hearing on the preliminary injunction to September 26, 1986.

On September 26, 1986, the court dismissed count I of G&J's complaint. The defendants' motion to dismiss the petition for a preliminary injunction was rendered moot by the court's ruling. On October 3, 1986, the court made its order of September 26, 1986, final and appealable pursuant to Supreme Court Rule 304.

On September 29, 1986, the defendants filed an amended notice of interlocutory appeal pursuant to Supreme Court Rule 307, appealing the court's order of August 29, 1986, granting the TRO, the order of September 8, 1986, denying the defendants' motion to dissolve the TRO and the order of September 15, 1986, extending the TRO.

On October 27, 1986, the city council of the City of Chicago passed an ordinance authorizing an agreement between the city and Ganser-Oguss Parking, Inc., for the management and operation of the six parking facilities in question.

On October 28, 1986, G&J filed a notice of appeal regarding the court's order of September 26, 1986, dismissing count I of its complaint.

On October 30, 1986, the city locked G&J out of the six parking facilities it had been managing and impounded its business records.

The issues presented on appeal are whether the TRO was improperly entered and whether count I of plaintiff's complaint states a cause of action. We will address the plaintiff's contentions first.

■ Plaintiff argues that the trial court improperly dismissed count I of its complaint. The defendants maintain that we should not entertain the plaintiff's appeal because it has been rendered moot. We agree. It is well established that when a reviewing court has notice of facts which show only moot questions or abstract propositions are involved, the court will dismiss the appeal. (*People v. S.L.C.* (1986), 115 Ill. 2d 33, 39, 503 N.E.2d 228.) A question is moot when no actual controversy exists or it is impossible for the court to grant effectual relief. (*People v. Lynn* (1984), 102 Ill. 2d 267, 272, 46 N.E.2d 1031.) Where a decision reached on the merits would render wholly ineffective relief to the prevailing party, the court, in effect, has rendered an advisory opinion. (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 76, 491 N.E.2d 1160.) The courts of Illinois generally do not issue advisory opinions to guide future litigation, the only exception to this rule being cases where the magnitude or immediacy of the interests involved warrant action by the court. (*People ex rel. Black v. Dukes* (1983), 96 Ill. 2d 273, 277, 449 N.E.2d 856.) We do not believe that the instant factual matrix warrants action pursuant to the exception.

Count I of plaintiff's complaint seeks to have the defendants enjoined from terminating the lease agreement in question prior to December 31, 1986. Since this relief can no longer be granted, the plaintiff's appeal has in fact been rendered moot.

Next, we consider the defendants' appeal. Initially we note that the defendants appear to be experiencing some difficulty in determining which orders they are actually appealing. The amended notice of interlocutory appeal filed by them indicates that they are appealing the court order of August 29, 1986, entering the TRO; the order of September 8, 1986, denying their motion to vacate the TRO and extending it to September 15; and the order of September 15, 1986, further extending the TRO. In their brief, however, they address their argument to the order of September 17, 1986, extending the TRO in question. Although there were orders entered on both September 15 and September 17, 1986, neither of these orders extended a TRO. In fact, the record shows that the TRO in question was never extended a third time. On September 15, the trial court specifically stated in its order that the TRO expiring that day was not extended by virtue of any interlocutory proceedings in the appellate court; on September 17 the court simply entered and continued for hearing the plaintiff's second motion for a TRO.

The record indicates that a second TRO was entered by the trial court on September 19, 1986, but this order was not included in the

defendants' notice of appeal. Since this court's jurisdiction is limited to consideration of those matters which are raised in a notice of appeal (*People ex rel. Department of Human Rights v. Arlington Park Race Track Corp.* (1984), 122 Ill. App. 3d 517, 522-23, 461 N.E.2d 505), the propriety of that order is not at issue and will not be considered.

■ Defendants' first argument is that they were entitled to notice of the hearing on August 29, 1986. We agree. The granting of injunctive relief without notice is an extraordinary remedy and is appropriate only under the most extreme and urgent circumstances. (*Board of Education of Community Unit School District No. 101 v. Parlor* (1981), 85 Ill. 2d 397, 401, 424 N.E.2d 1152.) To grant such relief without notice to the adverse party it must clearly appear from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon. (Ill. Rev. Stat. 1985, ch. 110, par. 11–101.) The critical inquiry in all cases of this nature is whether, during the period it takes to give notice, the opponent will take such measures as to destroy the substance of the litigation or otherwise obstruct the court from dealing effectively with the issues. *Board of Education of Community Unit School District No. 101 v. Parlor* (1980), 81 Ill. App. 3d 667, 670, 81 N.E.2d 667, *aff'd* (1981), 85 Ill. 2d 397, 424 N.E.2d 1152.

Applying these principles, we believe that the complaint did not contain sufficient factual allegations of immediate and irreparable harm to alleviate the need for notice. Although the complaint states that if the injunctive relief is not granted plaintiff will suffer irreparable injury and damages, the pleadings fail to indicate how the plaintiff would be irreparably injured by notifying the defendants of the hearing. Nothing appears in the record to indicate why at least a minimum of notice, such as a telephone call, could not have been afforded to the defendants. (See *Board of Education of Community Unit School District No. 100 v. Parlor* (1981), 85 Ill. 2d 397, 424 N.E.2d 1152; *Skarpinski v. Veterans of Foreign Wars* (1951), 343 Ill. App. 271, 98 N.E.2d 858.) Consequently, we find that the TRO of August 29, 1986, was improperly entered.

On September 8, 1986, the court denied the defendants' motion to vacate the TRO. Based on our finding that the TRO was improperly entered on August 29, we also hold that the trial court improperly denied the defendants' motion to vacate that TRO.

Having decided that the TRO was improperly entered without notice, we reverse without regard to the other questions raised by the

defendants. See *Bettendorf-Stanford Bakery Equipment Co. v. U.A.W.: Local Union No. 1906* (1977), 49 Ill. App. 3d 20, 363 N.E.2d 867.

Accordingly, the order of the circuit court of Cook County denying the defendants' motion to vacate the TRO is reversed and this cause is remanded to that court with directions that it grant the motion to vacate and hold a hearing on damages, if any, that may have been incurred by reason of the wrongful issuance of the TRO on August 29, 1986.

Reversed in part and remanded, with directions.

O'CONNOR, J., concurs.

JUSTICE QUINLAN, specially concurring:

I agree with the majority that the trial court abused its discretion when it issued a temporary restraining order (TRO) on August 29, 1986, without requiring G&J to at least informally notify the City of Chicago of its petition for emergency injunctive relief. I also agree that under certain circumstances, a defendant may recover damages incurred by reason of a wrongfully issued TRO. However, I do not believe that TROs should be appealable orders or that the present procedure for appeal pursuant to Supreme Court Rule 307 (107 Ill. 2d R. 307) is at all practicable.

Prior to 1967, our injunction statute did not distinguish between temporary injunctions and preliminary injunctions. In 1967, the legislature amended the injunction statute, dividing injunctive relief into preliminary and permanent injunctions and adding temporary restraining orders. (Ill. Rev. Stat. 1967, ch. 69, pars. 3, 3—1 (now codified at Ill. Rev. Stat. 1985, ch. 110, par. 11—101).) TROs are an equitable device available to the trial court to merely preserve the status quo between the parties until such time as a hearing on the plaintiff's motion for a preliminary injunction can be held. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 541, 447 N.E.2d 288, 291.

Our 1967 amendments were based upon Rule 65 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 65) and distinguished between emergency temporary restraining orders and preliminary injunctions. Federal courts have long recognized that TROs are not subject to interlocutory review and that "often the question of their validity is moot or merged with final judgment when the case is reviewed at a later time." (*Squillacote v. Local 248, Meat & Allied Food*

*Workers* (7th Cir. 1976), 534 F.2d 735, 743 n.6; *Wright & Miller* §§2947, 2953.) Illinois courts, however, have blurred the distinction between TROs and preliminary injunctions by permitting interlocutory appeals of both forms of injunctive relief pursuant to Supreme Court Rule 307. See *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 186, 303 N.E.2d 1, 6 (Ryan, J., dissenting).

Although Illinois courts have held that TROs are immediately appealable, they have not gone so far as to hold that the filing of a notice of interlocutory appeal divests the trial court of all jurisdiction and, in fact, a trial court may determine the merits of the case before the appeal is heard. (*Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 826, 483 N.E.2d 1004; *Miller Brewing Co. v. Jos. Schlitz Brewing Co.* (7th Cir. 1979), 605 F.2d 990, 995.) The supreme court rules governing interlocutory appeals give the appellant 30 days from the time the order denying his motion to vacate is issued to file a notice of appeal and the record. (107 Ill. 2d R. 307.) The appellant has seven days from the filing of the record to file a brief, and the appellee has seven days thereafter to file his brief. The appellant then has seven days from the time the appellee's brief is filed to file a reply brief. 107 Ill. 2d R. 307(c).

Rule 307 permits a total of 51 days in which to prepare an interlocutory appeal for review. The injunction statute by its terms, however, limits TROs to 20 days (an initial 10-day period plus one extension by order of the court not to exceed 10 days). (See Ill. Rev. Stat.1985, ch. 110, par. 11—101.) Thus, under these circumstances, it is not even possible to file an appeal and receive a review of the decision granting the TRO before the order has expired. Quite likely, the appeal may not even be heard until after the case will have been decided on the merits and the TRO rendered moot. Accordingly, I do not see how the Illinois legislature could have intended TROs, as distinguished from preliminary injunctions, to be appealable in such a setting.

However, in *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1, our supreme court held that temporary restraining orders were appealable under Rule 307. The court's reasoning in *Bohn* is based on what I believe is a faulty premise that a defendant would be precluded from later recovering damages incurred by reason of the TRO if he were not permitted to immediately appeal its wrongfulness. 55 Ill. 2d at 185; see Unikel & Biederman, *Cases of First Impression: Prosecuting and Defending Against Motions for Temporary Restraining Orders*, 70 Ill. B.J. 568, 574 (1982).

Two justices dissented from the decision in *Bohn* on the ground

that the legislature intended for injunctive relief in Illinois to be similar to that in the Federal system. The *Bohn* dissenters noted that while preliminary and permanent injunctions are appealable as interlocutory orders, TROs are not appealable in the Federal system. The *Bohn* dissenters argue that courts should look to the substance and effect of the order, rather than its mere labeling as a TRO, to determine its appealability. (*Bohn*, 55 Ill. 2d at 188, 303 N.E.2d at 7-8.) Where a court has denied a motion to dissolve the TRO and continues it in effect after a hearing, such an order may actually perform the function of a preliminary injunction, and, thus, the effect of such an extension will change the TRO to a preliminary injunction. The defendant may then appeal the issuance of the order extending the TRO, but not the original TRO itself. (*New York Telephone Co. v. Communication Workers of America, AFL-CIO* (2d Cir. 1971), 445 F.2d 39, 46.) Under this analysis, the right to appeal is grounded, I believe, more properly in the issuance of a preliminary injunction and not in the denial of a motion to dissolve the TRO. *Bohn*, 55 Ill. 2d at 191, 303 N.E.2d at 9 (Ryan, J., dissenting).

Applying the analysis of the *Bohn* dissenters and the Federal courts to the present case, the city did not have an appealable order because there is no evidence in the record that the trial court continued the TRO of September 15, 1986, as the defendants had contended in their amended notice of appeal. The TRO dissolved by its own terms on that date and was not extended beyond the statutory authorized term.

I believe it is clear that the legislature did not intend TROs to be immediately appealable. To protect a defendant's claim for damages would merely require the defendant to file a post-trial motion for damages in the trial court within 30 days of a final determination on the merits of the plaintiff's case. (*Cf. Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 383, 483 N.E.2d 1271, 1275; *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 548, 447 N.E.2d 288, 295 (Simon, J., dissenting).) This approach would give the trial court the opportunity to render the issue of damages moot, by fashioning the final judgment to give this relief, would deter piecemeal appeals, and would promote the efficient resolution of injunction cases.

Accordingly, it is my opinion that the city's interlocutory appeal from the order denying its motion to vacate the TRO should not be appealable under Supreme Court Rule 307. I do, however, recognize that this view is not consistent with prevailing Illinois Supreme Court decisions, but I believe that these authorities should be reexamined by

our supreme court since, as stated, I also believe the underlying legal analysis supporting the appealability of TROs is faulty. However, if the court continues to find that public policy warrants the appealability of TROs, then I would further suggest that, at least, Rule 307 should be amended to shorten the time for filing a record and briefs. A more expedited appeal would allow a review of the trial court's decision before the TRO has expired by its own terms and while there is time to correct any error of the trial court.