HENRY A. HIRSCHAUER *et al.*, Plaintiffs-Appellees, v. THE CHICAGO SUN-TIMES, Defendant-Appellant.

First District (2nd Division)   No. 1—88—3781

Opinion filed December 12, 1989.

194

Levin & Funkhouser, Ltd., of Chicago (Lawrence R. Levin, Vance L. Liebman, Damon E. Dunn, and Patricia A. Bronte, of counsel), for appellant.

Phelan, Pope & John, Ltd., of Chicago (Richard J. Phelan, Richard A. Devine, Mark A. Brand, and William K. Blanchard, of counsel), for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiffs Henry A. Hirschauer and the Stratford News Agency (collectively News Agency) brought an action to obtain a mandatory

injunction forcing defendant-appellant Chicago Sun-Times (the Sun-Times) to continue selling newspapers to News Agency. On May 7, 1988, News Agency obtained an *ex parte* temporary restraining order (TRO) forcing the Sun-Times to continue selling newspapers to News Agency. On June 28, 1988, News Agency filed a motion for voluntary dismissal and the Sun-Times filed a motion to dissolve the TRO. The Sun-Times' motion was granted, and the cause was dismissed by an agreed order. The Sun-Times then filed a motion for statutory damages under section 11—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 11—110) due to the wrongful issuance of the TRO. That motion was denied, and the Sun-Times brought this appeal.

The issues raised are (1) whether the appeal should be dismissed as untimely on the ground that the Sun-Times failed to appeal from an earlier order denying its motion to dissolve the TRO: and (2) whether the Sun-Times is entitled to damages under section 11—110 of the Code of Civil Procedure resulting from the wrongful issuance of the TRO. We hold that the appeal is not untimely and that the trial court improperly denied the Sun-Times' motion for damages.

The essential facts are not disputed. On Friday, May 6, 1988, the Sun-Times gave News Agency, a wholesale purchaser of newspapers from the Sun-Times for more than 30 years, written notice that it had decided to stop selling newspapers to News Agency, effective Monday, May 9, 1988. In an *ex parte* proceeding on Saturday, May 7, 1988, without notice to the Sun-Times, News Agency obtained a TRO forcing the Sun-Times to continue selling newspapers to News Agency and directing the parties to appear in court on Monday, May 9, 1988. The Sun-Times first learned of the TRO on Sunday, May 8, 1988. On Monday, May 9, 1988, News Agency filed a complaint for injunctive relief alleging that News Agency purchased and distributed the Sun-Times' newspapers pursuant to an unspecified oral distributorship contract and praying for an injunction forcing the Sun-Times to continue selling newspapers to News Agency. On the same date, both parties appeared in court but the Sun-Times sought a change of venue and the proceedings were rescheduled for the following day.

On Tuesday, May 10, 1988, a hearing was held on the continuance of the TRO. News Agency argued that the Sun-Times should be equitably estopped to refuse to sell newspapers to News Agency without first paying News Agency for the value of its business. The Sun-Times argued that the pleadings failed to state a cause of action either in contract or estoppel and raised as further grounds for dismissal News Agency's failure to give the Sun-Times notice of the

TRO motion. The trial court concluded that "[t]here [was] the possibility *** that the summary termination of [News Agency's] distributorship without compensation create[d] a condition of equitable estoppel which this court of equity would or could enforce through a preliminary injunction" and continued the TRO. Regarding News Agency's failure to give notice, the trial court stated: "You have notice now. If I were to extend it, you have notice. What difference does that make ***[?]"

On May 19, 1988, the Sun-Times filed an emergency motion to dismiss News Agency's complaint and to dissolve the TRO. The Sun-Times argued again that the complaint failed to state a cause of action either in contract or estoppel and failed to allege that monetary relief was inadequate. News Agency did not respond to the motion. Instead, News Agency filed an amendment to its complaint and argued that the motion to dissolve the TRO had become moot with the filing of the amendment. The amendment to the complaint and accompanying memorandum of law were served on the Sun-Times after the close of business on May 24, 1988.

On May 25, 1988, the hearing was held on the Sun-Times' motion to dismiss the original complaint and first motion to dissolve the TRO. The trial court granted News Agency leave to file its amended complaint *instanter*, dismissed the original complaint, denied the Sun-Times' motion to dissolve the TRO, and continued the TRO under the amended complaint. The order dismissing the original complaint and denying the motion to dissolve the TRO was entered on June 6, 1988. No appeal from that order was taken.

On June 6, 1988, the Sun-Times filed a motion to dismiss News Agency's amended complaint and a second motion to dissolve the TRO. The Sun-Times argued that the amended complaint, like the original complaint, failed to state a cause of action. No hearing on this motion was ever held. On June 13, 1988, and again on June 21, 1988, News Agency obtained additional time in which to respond to the Sun-Times' motion. On June 28, 1988, News Agency filed an emergency motion for voluntary dismissal. On the same date, the Sun-Times filed a third motion to dissolve the TRO based on the voluntary dismissal. The Sun-Times' motion was granted, and News Agency's motion for voluntary dismissal was continued.

On August 30, 1988, the Sun-Times filed a motion for a finding that the TRO had been wrongfully issued and for damages under section 11—110 of the Code of Civil Procedure. On October 4, 1988, the Sun-Times' motion was denied. The trial judge ruled that damages were not available either because the TRO was "ancillary" to the per-

manent injunctive relief sought, or because damages were precluded by News Agency's voluntary dismissal. The trial court also refused to find that the TRO had been wrongfully issued, stating that such a finding "would be inconsistent with [the trial court's] prior rulings." On November 29, 1988, an agreed order was entered dismissing the cause.

I

News Agency maintains that the trial court's June 6, 1988, order denying the first motion to dissolve the TRO was a ruling that the TRO was properly granted. Because the Sun-Times did not appeal from that order, News Agency argues, it is the law of the case, barring the Sun-Times from recovering statutory damages. We disagree, reaffirming our earlier ruling against News Agency following News Agency's fully briefed motion to dismiss this appeal.

■ Under section 11—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 11—110), after the dissolution of a temporary restraining order or preliminary injunction, but before final disposition of the action, the trial court is required, upon the petition of the party injured by the temporary restraining order or preliminary injunction, to determine and enter judgment for damages in favor of that party. Section 11—110 is to be strictly construed, and damages are to be awarded under it "only if the preliminary injunction has been dissolved before the case is disposed of on the merits, and thus adjudicated to have been wrongfully issued." (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 439, 343 N.E.2d 479; *Boltz v. Estate of Bryant* (1988), 175 Ill. App. 3d 1056, 1062, 530 N.E.2d 985.) The damages question must be preserved by the timely filing in the trial court of a motion to dissolve the injunction. *Boltz v. Estate of Bryant*, 175 Ill. App. 3d at 1062; *Emerson Electric Co. v. Sherman* (1986), 150 Ill. App. 3d 832, 836, 502 N.E.2d 414.

■ In this case, there is no dispute that the Sun-Times filed a timely motion to dissolve the TRO. Nevertheless, News Agency maintains that in denying the first motion to dissolve, the trial court ruled that the TRO was properly entered, and because the Sun-Times did not appeal from that order, it cannot now argue, as a prerequisite to the recovery of damages, that the TRO was wrongfully entered. The first motion to dissolve the TRO, however, was based on News Agency's original complaint. That complaint was dismissed, News Agency filed an amended complaint, and the TRO was continued. If the trial court denied the motion to dissolve the TRO, which is not clear, it plainly did not resolve the motion on its merits because the original

complaint which formed the basis for the motion was dismissed. Indeed, as argued by News Agency at the hearing on the motion to dissolve, the motion was mooted by the dismissal of the original complaint and the filing of the amended complaint. Accordingly, we conclude that the June 6, 1988, order was not an adjudication that the TRO was properly issued.

■ The Sun-Times' second motion to dissolve the TRO, this time based on the amended complaint, was likewise never resolved on its merits. News Agency obtained two extensions of time to respond to the motion. The motion was never fully briefed and no hearing on the motion was ever held. Instead, News Agency filed a motion for voluntary dismissal, and the Sun-Times responded with its third motion to dissolve the TRO based on the voluntary dismissal. Clearly the third motion, which was allowed, was not an adjudication that the TRO was properly issued. Thus, there was no order ruling that the TRO was properly issued which, if the Sun-Times had failed to appeal, would be the law of the case barring the Sun-Times from recovering statutory damages.

*Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 447 N.E.2d 288, and *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 126 N.E.2d 201, relied on by News Agency, are inapposite. In both of those cases, the trial courts unambiguously denied the defendants' motions to dissolve the TROs. In this case, by contrast, the trial court continued the TRO under News Agency's amended complaint and never held a hearing on the Sun-Times' subsequent motion to dissolve the TRO based on the amended complaint.

## II

The Sun-Times maintains that it is entitled to statutory damages under section 11–110 of the Code of Civil Procedure because the premature dissolution of the TRO, before any hearing on the merits of expiration of the TRO on its own terms, was a *de facto* adjudication that the TRO was wrongfully issued; that the TRO was wrongfully issued as a matter of law because it was issued without notice to the Sun-Times following an *ex parte* proceeding; and that the TRO was wrongfully continued because neither the original nor the amended complaint stated a cause of action. Although we reject the Sun-Times' *de facto* adjudication argument, for the reasons given below, we agree that the TRO was wrongfully entered and continued.

■ The purpose of a TRO is to allow the trial court to preserve the status quo until it can hold a hearing to determine whether it should grant a preliminary injunction. (*Stocker Hinge Manufacturing*

*Co. v. Darnel Industries, Inc.* (1983), 94 Ill. 2d 535, 541, 447 N.E.2d 288.) A TRO should not be refused or dissolved merely because the court may not be absolutely certain the plaintiff has the right he claims. (*Stocker Hinge Manufacturing Co. v. Darnel Industries*, 94 Ill. 2d at 541-42; see also *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 503, 126 N.E.2d 201 ("A temporary injunction may be wrongfully issued although plaintiff prevails in his suit for a permanent injunction [citation] and the temporary injunction may rightfully issue although plaintiff does not sustain his suit on the merits").) The plaintiff is not required to make out a case which would entitle him to judgment at trial; rather he need only show that he raises a "fair question" about the existence of his right and that the court should preserve the status quo until the case can be decided on the merits. *Stocker Hinge Manufacturing Co. v. Darnel Industries*, 94 Ill. 2d at 542.

■ The decision to issue a TRO is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. (*Stocker Hinge Manufacturing Co. v. Darnel Industries*, 94 Ill. 2d at 541.) Although not expressly stated in section 11—110, a prior adjudication that the TRO was wrongfully issued is a prerequisite to recovery of statutory damages. *Stocker Hinge Manufacturing Co. v. Darnel Industries*, 94 Ill. 2d at 543; *Meyer v. Marshall* (1976), 62 Ill. 2d 435, 439, 343 N.E.2d 479; *Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 303 N.E.2d 1.

■ We do not believe that the dissolution of the TRO in this case prior to the dismissal of News Agency's amended complaint was a *de facto* adjudication that the TRO was wrongfully issued. As a general rule, the mere dissolution of a TRO prior to a final determination on the merits does not by itself establish that the TRO was wrongfully entered. (See *Stocker Hinge Manufacturing Co. v. Darnel Industries*, 94 Ill. 2d at 542-43.) Thus, the dissolution of the TRO in this case before dismissal of the cause does not by itself establish that the TRO was wrongfully entered. *Boltz v. Estate of Bryant* (1988), 175 Ill. App. 3d 1056, 530 N.E.2d 985, relied on by the Sun-Times, does not compel a contrary conclusion. In that case, the court concluded that the party opposing the dissolution of the TRO consented to the entry of an order dissolving the TRO, waived any defenses to the motion to dissolve, and could not attack the order on appeal. In this case, by contrast, News Agency did not consent to entry of an order dissolving the TRO and did not waive any defenses to the Sun-Times' motion to dissolve.

■ Because the trial court never found specifically that the TRO

was wrongfully issued, like the appellate court in *Boltz*, we must decide whether the TRO was wrongfully issued on the record before us. Initially, we note that the TRO was issued following the *ex parte* proceeding on May 7, 1988, without notice to the Sun-Times. Under section 11—101 of the Code of Civil Procedure, a TRO may be obtained without notice to the adverse party only if "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." (Ill. Rev. Stat. 1987, ch. 110, par. 11—101.) Injunctive relief without notice is an extraordinary remedy appropriate only under the most extreme and urgent circumstances. (*G&J Parking Co. v. City of Chicago* (1988), 168 Ill. App. 3d 382, 387, 522 N.E.2d 774.) The critical inquiry in all cases is whether, during the period it takes to give notice, the opponent will take such measures as to destroy the substance of the litigation or otherwise obstruct the court from dealing effectively with the issues (*G&J Parking Co. v. City of Chicago*, 168 Ill. App. 3d at 387), and whether proper notice might have averted litigation by "immediately test[ing]" the validity of injunctive relief (*Boltz v. Estate of Bryant*, 175 Ill. App. 3d at 1065).

■ In this case, nothing in the record indicates why "a minimum of notice, such as a telephone call," could not have been provided to the Sun-Times (see *G&J Parking Co. v. City of Chicago*, 168 Ill. App. 3d at 387), or how News Agency would have been irreparably harmed before notice could have been given. Also, notice to the Sun-Times would not have prevented News Agency from filing its complaint on Monday, May 9, 1988, or otherwise jeopardized its claim for injunctive relief.

■ We also note that the TRO was properly continued only if the original and amended complaints raised a "fair question" as to the existence of a right to relief. As noted by the Sun-Times, no facts pleaded in either of the complaints indicated the duration of the distributorship agreement. Because a contract for an indefinite term is terminable at will for any reason, good cause or not, or no cause at all (*Alderman Drugs, Inc. v. Metropolitan Life Insurance Co.* (1987), 161 Ill. App. 3d 783, 515 N.E.2d 689), even if News Agency sufficiently pleaded the existence of a contract, there were still insufficient facts pleaded to establish a breach of the contract (see *Sider v. Outboard Marine Corp.* (1987), 160 Ill. App. 3d 290, 300, 513 N.E.2d 449). Although News Agency was not required to conclusively establish its right to relief before the TRO would properly issue, it does not appear that the pleadings raised even a "fair question" that the agree-

ment, if it existed at all, was breached by the Sun-Times' termination notice.

■■■ It also does not appear that the pleadings raised a "fair question" as to News Agency's right to relief under an estoppel theory. Count II of the amended complaint alleged that the Sun-Times' silence regarding the terminable nature of the relationship gave rise to an equitable estoppel. Similar claims, however, have consistently been rejected by the Illinois courts. See, *e.g., UIDC Management, Inc. v. Sears, Roebuck & Co.* (1988), 167 Ill. App. 3d 81, 520 N.E.2d 1164; *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.* (1984), 130 Ill. App. 3d 798, 474 N.E.2d 1245, *aff'd* (1986), 114 Ill. 2d 133, 500 N.E.2d 1.

Because the TRO was issued without notice to the Sun-Times, the original complaint was dismissed, and the allegations in both the original and the amended complaint were deficient, we conclude that the TRO was wrongfully issued on May 7, 1988, and wrongfully continued on both May 10 and May 25, 1988.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for a determination of damages pursuant to section 11—110 of the Code of Civil Procedure.

Reversed and remanded.

HARTMAN and SCARIANO, JJ., concur.