WILLIAM J. POWELL, d/b/a Powell and Company, *et al.*, Plaintiffs-Appellees, v. HOME RUN INN, INC., Defendant-Appellant.

First District (5th Division)   No. 1—90—0391

Opinion filed August 3, 1990.—Rehearing denied September 27, 1990.

Carey, Filter, White & Boland, of Chicago (Michael J. Murray and F. Kevin Murnighan, of counsel), for appellant.

Krupa & Braun, Chartered, of Flossmoor (Paul S. Braun, of counsel), for appellees.

PRESIDING JUSTICE COCCIA delivered the opinion of the court:

## INTRODUCTION

Defendant Home Run Inn, Inc., appeals from a preliminary injunction entered against it by the circuit court. The circuit court enjoined Home Run from distributing its frozen food products to the

customers of its distributors, plaintiffs Powell and Company and Tumino Sales, Inc. For the following reasons, we have concluded that the circuit court wrongfully enjoined Home Run.

## BACKGROUND

Powell and Tumino filed their complaint in chancery on December 20, 1989. Powell and Tumino alleged generally that they are in the business of distributing frozen food products to various retail outlets in the Chicago metropolitan area. Among the products they distribute are pizza and lasagna manufactured by Home Run.

In count I, Powell alleged that Home Run tortiously interfered with its business relationships. Powell averred that, since 1975, it had orally agreed with Home Run to distribute the latter's frozen food products to retail outlets in the Chicago area. Powell claimed that Home Run agreed not to "direct sell" to retail establishments; that is, it agreed to distribute through Powell rather than directly to retailers. In 1986, according to Powell, the parties entered into negotiations for a written distribution contract. In exchange for Home Run's participation in these negotiations, Powell turned over a list of its customers and accounts. In return, Powell charged, Home Run promised to keep the lists confidential. Subsequently, however, Home Run encouraged another distributor and a food broker to solicit accounts from the customer lists, including Dominicks Finer Foods. In addition, Powell alleged that it was undercut by Home Run, which sold its products to the other distributors at a lower cost. Powell concluded that Home Run's conduct constituted an intentional interference with business relationships and an intentional breach of the distribution agreement. Powell sought recovery for its lost profits, sales, and good will, and prayed for injunctive relief and money damages. In count III, Powell charged Home Run with breach of the oral distribution agreement.

In count II, Tumino alleged that Home Run tortiously interfered with its business relationships. Tumino's allegations are virtually identical to Powell's, except that the former's relationship with Home Run began in 1971. Similarly, in count IV, Tumino sought to hold Home Run liable for breach of its oral distribution contract.

On December 22, 1989, Powell and Tumino persuaded the circuit court to enter an *ex parte* temporary restraining order against Home Run. Upon the filing under seal of Powell and Tumino's customer lists, which were the subject of the confidentiality agreements, Home Run was enjoined and restrained from distributing to any customers or accounts set forth in the lists.

Home Run answered the complaint on January 2, 1990. It denied tortiously interfering with Powell and Tumino's business relationships. Home Run went on to allege that Powell and Tumino also distribute pizzas manufactured by one of its competitors. According to Home Run, it merely agreed to sell Powell and Tumino any frozen food products that might be available after its employees and others filled their orders. Home Run averred that sales of its products had decreased since 1986. Home Run conceded that it required Powell and Tumino to turn over their customer lists, yet claimed it did so in order to monitor complaints and requests from their clients. Home Run noted that the parties were unable to successfully negotiate written distribution agreements. It denied that any of its distributors had the exclusive right to sell in a given area. Finally, Home Run denied breaching the oral distribution agreements.

An evidentiary hearing on Powell and Tumino's request for the entry of a preliminary injunction began on January 3, 1990. This hearing lasted three days, with the testimony of eight witnesses being taken. During the course of the hearing, the circuit court repeatedly stated that it was solely concerned with Home Run's alleged breach of its confidentiality agreements with Powell and Tumino, rather than the oral distribution agreements; at one point, the circuit court indicated to Home Run that it was not interested in hearing any evidence concerning the distribution agreements.

After the TRO was dissolved on January 8, 1990, the circuit court entered a preliminary injunction order on January 10, 1990. This order recites:

"THE COURT HEREBY FINDS AS FOLLOWS:

1. Plaintiffs and Defendant heretofore entered into an oral agreement for purchase of frozen food products and distribution and sale of such products to retail outlets. This agreement is terminable at will.

2. Plaintiffs and Defendant entered into written confidential [sic] agreements whereby Defendant promised to maintain confidentiality for all lists of Plaintiffs' customers that were furnished to Defendant by Plaintiffs at Defendant's specific insistence and demand.

3. Defendants subsequently breached the confidential [sic] agreements by soliciting accounts for defendant which were formally [sic] the accounts of Plaintiffs, specifically, but not limited to, Dominicks, by undercutting the retail prices at which Plaintiffs sold product to Dominicks. Defendant further placed a map of all distributors' accounts on the premises of Defend-

ant making that [sic] readily accessible to any one [sic] who wished to view such map. Defendant further actively solicited others to solicit accounts then being serviced by Plaintiff, Powell.

4. That such conduct by Defendant shows a clear and willful intention to breach the confidential [sic] agreements of the parties.

5. That there is no adequate remedy at law by way of damages and that there is an absolute likelihood of success on the merits with regard to this aspect of injunctive relief being sought and Plaintiffs have established a clearly ascertainable right to a preliminary injunction by reason of the testimony of the Plaintiffs, which is unrebutted.

6. Greater harm to Plaintiffs than to Defendant would occur in the event that this relief was denied; ***."

On the basis of these findings, the circuit court preliminarily enjoined and restrained Home Run from selling or distributing its products to any customers or accounts set forth in Powell and Tumino's customer lists. The circuit court provided that the preliminary injunction would remain in effect for one year from the date of entry; however, in the event Home Run terminated the oral distribution agreements, the injunction would remain in effect from one year of the delivery of written notice of termination. The circuit court then transferred the cause to the law division for determination of the remaining issues.

The circuit court also took evidence as to the amount of bond to be given by Powell and Tumino. Joseph Perrino, executive vice-president of Home Run, testified that Tumino's sales amounted to approximately $600,000 per year, and that Powell's amounted to $800,000. Perrino stated that Home Run expended nearly $2 million to expand its frozen foods division between 1986 and 1987. According to Perrino, Home Run's 15 employees would lose $250,000 in salary over the course of one year if the plant were forced to shut down, and its sales would suffer to the tune of $1,500,000 per year if it could not sell its products. The circuit court then accepted irrevocable letters of credit, in the amount of $100,000 from Southwest Financial Bank and Midwest Bank and Trust, as bond. The circuit court ordered Powell to post 70% of this sum and Tumino to post 30%.

Home Run has appealed to this court. (See 107 Ill. 2d R. 307(a)(1).) At its request, we took the case on an expedited schedule. On April 4, 1990, also at Home Run's request, we increased the amount of the bond to $500,000, and provided that Powell and Tumino give a surety bond, rather than letters of credit. Powell and

Tumino have moved to reconsider this ruling, and we took their motion with the case.

ANALYSIS

THE INJUNCTION ISSUE

■ Applicants for preliminary injunctions are not entitled to injunctive relief as a matter of right. Instead, applicants must show that: (1) they clearly have a lawful right for which protection is sought; (2) they will be irreparably harmed in the absence of injunctive relief; and (3) their remedies at law are inadequate. See *G.H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1, 5, 305 N.E.2d 317, 320.

■ Traditionally, when reviewing courts consider appeals from orders granting preliminary injunctions, they do so under the abuse of discretion standard. (See *Dixon Association for Retarded Citizens v. Thompson* (1982), 91 Ill. 2d 518, 524, 440 N.E.2d 117, 120.) Quoting *City of Chicago v. Airline Canteen Service, Inc.* (1978), 64 Ill. App. 3d 417, 432-33, 380 N.E.2d 1106, 1118, the supreme court stated in *Dixon*:

> " 'It is well established that a hearing on a motion for a preliminary injunction does not determine any factual issue. A preliminary injunction is issued to preserve the *status quo* until the trial court may consider the merits of the case. In ruling on a motion for such relief, controverted facts or the merits of the case *are not decided.* In reviewing the discretion exercised by the trial court, an appellate court may decide only whether the petitioner has demonstrated a *prima facie* case that there is a fair question as to the existence of the rights claimed; that the circumstances lead to a reasonable belief that they probably will be entitled to the relief sought, if the evidence sustains the allegations of the petition; and that matters should be kept in *status quo* until the case can be decided on its merits. In sum, the only question before us is whether there was a sufficient showing to sustain the order of the trial court.' " (Emphasis in original.) (*Dixon*, 91 Ill. 2d at 524-25, 440 N.E.2d at 120.)

In *Dixon*, the supreme court noted that although the circuit court purported to issue a preliminary injunction and repeatedly stated that it was only preserving the status quo until there could be a hearing on the merits, the lower court actually rendered a decision on the merits. Consequently, the supreme court did not consider itself to be constrained by the traditional scope of review governing an order issuing

a preliminary injunction. See *Dixon*, 91 Ill. 2d at 525, 440 N.E.2d at 120.

■ Like the circuit court in *Dixon*, the circuit court in our case entered a decision on the merits; like the supreme court in *Dixon*, therefore, we do not feel constrained by the traditional standard of review. In the first place, the circuit court found that Home Run breached the confidentiality agreements, even though Powell and Tumino did not seek to hold Home Run liable for breach of those agreements in their complaint. In the second place, the circuit court found that the parties entered into oral contracts, terminable at will, for the distribution of Home Run's products. This finding is all the more puzzling since Home Run denied the existence of the alleged oral distribution contracts, since the circuit court said during the hearing that the contracts were not at issue, and since the court stated that it was not interested in taking evidence regarding them. Notwithstanding these facts, the circuit court went on to find that the parties had entered into oral distribution contracts, terminable at will. At the very least, then, the circuit court decided controverted facts.

■ Because the purpose of a preliminary injunction is to preserve the status quo until trial on the merits, the definition of this term is a matter of no small importance. Status quo has been defined as the last, actual, peaceable, uncontested status that preceded the pending controversy. See *Grillo v. Sidney Wanzer & Sons, Inc.* (1975), 26 Ill. App. 3d 1007, 1011, 326 N.E.2d 180, 183.

■ Thus, reversal is also required in this case because the circuit court altered, rather than preserved, the status quo. Assuming for argument's sake that Powell and Tumino correctly assert that the parties entered into oral contracts for distribution—which Home Run appears to characterize as options to purchase—the preliminary injunction order plainly states that those contracts were terminable at will. But the circuit court went on to enjoin Home Run from terminating Powell and Tumino unless it gave them one year's written notice, thereby converting oral terminable at will agreements into agreements terminable upon one year's written notice. (See *Hirschauer v. Chicago Sun-Times* (1989), 192 Ill. App. 3d 193, 201, 548 N.E.2d 630, 636 (distributorship agreement for indefinite term was terminable at will for any reason, good cause or not, or no cause at all).) In a sense, Powell and Tumino succeeded in getting the circuit court to impose on Home Run through an injunction that which they could not achieve with it through negotiations: a written distribution agreement.

■ Because the circuit court wrongfully enjoined Home Run, we must reverse the order of January 10, 1990. Rather than returning

the cause to the chancery division, however, we have concluded that it should be remanded to the law division. As mentioned above, injunctive relief is appropriate only where the legal remedy is inadequate. When money damages are sufficient compensation, or when the applicant has an adequate legal remedy, an injunction will not lie. (See *Cellini*, 16 Ill. App. 3d at 6, 305 N.E.2d at 321 (injunction dissolved where plaintiff's rights would be fully protected under contract or suretyship law, and where issuance of injunction circumvented that law).) We think the legal relief available to Powell and Tumino—money damages—is clearly adequate. Such damages are the usual remedy for violation of obligations created by contract, as well as the common law of torts, and the longstanding nature of the parties' relations will not render the calculation of damages unduly difficult, if any are proven. We express no view, of course, on the merits of Powell and Tumino's claims.

THE BOND ISSUE

We now turn to Powell and Tumino's motion to reconsider our order of April 4, 1990. Resolution of this issue depends upon section 11—103 of the Illinois Code of Civil Procedure, which provides:

"Bond. The court in its discretion, may before entering a restraining order or a preliminary injunction, require the applicant to give bond in such sum, upon such condition and with such security as may be deemed proper by the court, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Ill. Rev. Stat. 1989, ch. 110, par. 11—103.

This court has stated that if parties are aggrieved by the lack of a bond or the inadequacy of the bond posted, their remedy is a petition to the trial or reviewing court to require bond in an amount sufficient to cover the potential damages should the preliminary injunction later be found to have been wrongfully issued. See *American Warehousing Services, Inc. v. Weitzman* (1988), 169 Ill. App. 3d 708, 713, 533 N.E.2d 366, 369.

■ We are not disposed to reconsider our ruling of April 4, 1990, in which we increased the amount of the bond from $100,000 to $500,000 and ordered that Powell and Tumino post a bond rather than irrevocable letters of credit. The circuit court abused its discretion by allowing them to give letters of credit instead of a bond. (See Eisenberg, *Appellate Review of Discretionary Judicial Determinations*, 2 Appellate Law Review 8, 12 (1990) (when circuit court mis-

construes a statute in exercising its discretion, reversal is generally required).) The plain language of section 11—103 states that applicants must give bond. Moreover, Powell and Tumino have cited no decisions under this section, and our own research has disclosed no decisions, which support the proposition that letters of credit may be given in lieu of a bond. Furthermore, Home Run points out that the record is silent regarding the financial condition of the banks that issued the letters.

As stated previously, the circuit court originally required that Powell and Tumino give $100,000. In this court, Home Run requested that we require bond in the amount of no less than $2 million. Ultimately, we arrived at the $500,000 figure. The preliminary injunction, which we have concluded was wrongfully issued, has been in effect over six months. Based on the evidence Home Run presented in the circuit court, it may have lost $750,000 in sales—and its employees $125,000 in wages—during the time the injunction has been in effect. The $500,000 bond we required is substantially less than the amount of money Home Run may have lost. Powell and Tumino contend that Home Run will reap greater profits during the life of the injunction than it would have had it been allowed to terminate the distribution agreements. If this proves to be true on remand, then the amount of the bond is essentially irrelevant. In closing, we wish to make clear that we do not disturb the circuit court's ruling that Powell give 70% of the bond and that Tumino give 30%. Thus, Powell and Tumino's motion to reconsider our order of April 4, 1990, is denied.

## CONCLUSION

For the reasons stated, we reverse the preliminary injunction entered against Home Run by the circuit court and remand the cause for further proceedings consistent with this opinion.

Reversed and remanded with directions.

LORENZ and GORDON, JJ., concur.