C.D. PETERS CONSTRUCTION COMPANY, INC., Plaintiff-Appellee, v.
TRI-CITY REGIONAL PORT DISTRICT, Defendant (Keller Construction,
Inc., Defendant-Appellant).

Fifth District    No. 5—95—0582

Opinion filed May 30, 1996.

42

CHAPMAN, J., dissenting.

J. Todd Hayes, of Burroughs, Hepler, Broom, MacDonald & Hebrank, of Edwardsville, for appellant.

John T. Papa, of Callis, Papa, Jensen, Jackstadt & Halloran, P.C., of Granite City, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, C.D. Peters Construction Company, Inc., filed a complaint for injunction and temporary restraining order against defendants, Tri-City Regional Port District (hereinafter Port District) and Keller Construction, Inc. (hereinafter Keller), to halt work on a railroad spur construction project. Although plaintiff submitted a lower bid, the Port District awarded the project to Keller. The temporary restraining order was sought in order to halt work on the railroad spur construction project until the dispute between plaintiff and the Port District over whether the bid was wrongfully awarded to Keller could be resolved. On the same day the complaint was filed, March 17, 1995, a temporary restraining order was entered by the trial court enjoining and restricting the Port District from conducting further work on the project for 10 days. In the same order, the trial court scheduled a hearing for March 23, 1995, to determine whether the temporary restraining order should be extended beyond 10 days. The initial order of the trial court was based on allegations

contained in plaintiff's verified complaint. On March 21, 1995, Keller filed a motion to dissolve the temporary restraining order or, in the alternative, to modify the temporary restraining order to require plaintiff to post a bond. The Port District filed similar motions. On March 23, 1995, the trial court heard arguments on the motion to withdraw the temporary restraining order. Ultimately, the trial court denied plaintiff's request for a preliminary injunction and dissolved the temporary restraining order. On April 7, 1995, Keller filed a motion for statutory damages under section 11—110 of the Code of Civil Procedure (the Code) (735 ILCS 5/11—110 (West 1994)). Keller now appeals from the denial of its motion for damages, contending (1) that the trial court erred in denying its petition for damages because the language of section 11—110 provides that damages shall be awarded where the temporary restraining order has been dissolved, and (2) that the trial court erred in holding that the March 17, 1995, temporary restraining order was not wrongfully issued. Defendant Port District takes no part in this appeal. We affirm.

## I

On August 20, 1994, the Port District published a bid notice for a railroad spur construction project. Plaintiff submitted a bid to the Port District in the amount of $786,445. Keller submitted a bid of $855,597.81. On December 29, 1994, the Port District awarded the bid to Keller. The Port District contends that it was required only to award the bid to the lowest responsible bidder. The Port District informed plaintiff that it had awarded the contract to Keller rather than plaintiff because plaintiff was unwilling to complete the project in a timely and efficient manner.

On January 26, 1995, plaintiff sent a letter to the Port District in which it protested the award of the bid to Keller. In the letter, plaintiff alleged that it had not been awarded the contract because of a lawsuit filed by James Peters, president of plaintiff, against Granite City. Plaintiff requested that the Port District rescind its contract to Keller, declare plaintiff the low and responsible bidder, and award the contract to plaintiff. Plaintiff also requested that no notice to proceed with work be issued to Keller until the protest of the award to Keller was fully resolved.

On March 17, 1995, plaintiff filed a complaint for injunction and a temporary restraining order. The complaint alleged that a notice to proceed with the project was issued to Keller by the Port District and work had begun. The complaint sought a temporary restraining order without notice and without bond. The temporary restraining order was sought in order to halt work on the project until the dispute

between plaintiff and the Port District over whether the Port District wrongfully awarded the bid to Keller could be resolved. On the same day the complaint was filed, a temporary restraining order was entered by the trial court enjoining defendants for 10 days from conducting work on the construction project. At the same time, the trial court scheduled a hearing for March 23, 1995, to determine whether the temporary restraining order should be extended beyond the 10-day period.

On March 21, 1995, Keller filed a motion to dissolve the temporary restraining order or, in the alternative, to modify the temporary restraining order to require plaintiff to post a bond. Attached to said motion was the affidavit of Jerry Hamman, an employee of Keller, setting forth that the shutdown of the project required Keller to remove pieces of heavy equipment to another jobsite at a cost of $442.50. Hamman also attested to the fact that equipment idled due to the shutdown was costing Keller approximately $3,772 per day, and, if work was not soon resumed, Keller's only economically feasible alternative would be to remove the equipment to other sites. This would add an additional expense of moving such equipment back at a later date. Hamman stated that this redeployment would cause a delay, potentially exposing Keller to liquidated damages.

The hearing scheduled by the trial court for March 23, 1995, took place as scheduled. At that time the trial court took up the motion to dissolve. The trial court heard arguments and allowed James D. Peters to testify. Both defendants orally moved to dismiss the complaint for failing to identify any legal basis for the injunction. The motion was denied. At the close of the hearing, the trial court specifically stated:

"I think this particular plaintiff has a protectable interest and a right to some kind of relief if he has a cause of action. I'm not sure that this court is the proper place for an inquiry into the governance of Tri-City Port Authority, and whether they should or should not provide some kind of protest remedies or whatever. While we all may think that makes a lot of sense, I'm not sure I'm in a position to start telling them how to run their business.

But what is important probably for this particular hearing and at this particular stage is that it's the finding of the court after listening to evidence presented by the plaintiff that C.D. Peters Company has, in fact, failed to show an inadequate remedy at law, and particularly has failed to show a likelihood that they will prevail on the merits. Clearly we have damages that can be established if, in fact, there is a proper cause of action here."

The trial court also found no evidence that plaintiff suffered damage to its reputation due to loss of the contract and thus failed to meet its burden of showing irreparable harm. The trial court denied the request for a preliminary injunction and dissolved the temporary restraining order.

On April 7, 1995, Keller filed its verified petition for damages pursuant to section 11—110 of the Code. The verified petition set forth that due to entry of the temporary restraining order, Keller was shut down for six days and total damages of $20,296.50 had accrued during that time. Keller stated it was also required to incur attorney fees and expenses in connection with the preparation and presentation of its motion to dissolve, in the amount of $2,464.64. Keller sought total damages of $22,761.14. Plaintiff filed a motion to dismiss the petition for damages, and a memorandum in opposition to plaintiff's motion to dismiss was filed by Keller. On June 23, 1995, a hearing was held on the petition for damages. The trial court took the matter under advisement and issued a written order denying the petition for damages. That order provided, in pertinent part:

"After reviewing the entire transcript and record the court finds that an arguable issue relative to the irreparable harm to the reputation of the plaintiff existed at the time the TRO was considered by the issuing judge. While it is true that this judge ultimately disagreed with the plaintiff's conclusion about his reputation, the court cannot find that his allegations relative thereto were in bad faith or fraudulent so as to induce the issuance of the TRO. Arguably, the plaintiff met all the requirements for a TRO at the time he obtained it."

Keller now appeals.

## II

Keller asserts that it is entitled to statutory damages under section 11—110 of the Code in the amount of $22,761.14 plus costs because section 11—110 provides that damages shall be awarded where the temporary restraining order has been dissolved. Keller argues that section 11—110 does not expressly provide that the temporary restraining order must be found to have been wrongfully issued before damages can be awarded, but that even assuming, *arguendo*, that such a finding is required, the instant temporary restraining order was wrongfully issued. We disagree.

■ Section 11—101 of the Code allows for the imposition of a temporary restraining order without notice. 735 ILCS 5/11—101 (West 1994). It also provides that when a temporary restraining order is issued without notice, it shall expire within 10 days. 735 ILCS 5/11—101 (West 1994). When a temporary restraining order is

entered without notice, a hearing on the motion for a preliminary injunction must take place at the "earliest possible time and takes precedence over all matters." 735 ILCS 5/11—101 (West 1994).

■ In the instant case, the trial court entered the temporary restraining order on March 17, 1995, and scheduled a hearing for March 23, 1995, for the purpose of determining whether a temporary restraining order should be extended beyond the 10-day period. In the interim, Keller filed a motion to dissolve the temporary restraining order. That motion was also taken up at the March 23, 1995, hearing. Ultimately, the trial court dismissed plaintiff's request for a preliminary injunction and dissolved the temporary restraining order. Keller subsequently filed a motion for damages pursuant to section 11—110 of the Code, which provides:

> "§ 11—110. Assessing damages. In all cases where a temporary restraining order or a preliminary injunction is dissolved by the circuit court or by the reviewing court, the circuit court, after the dissolution of the temporary restraining order or preliminary injunction, and before finally disposing of the action shall, upon the party claiming damages by reason of such temporary restraining order or preliminary injunction[ ] filing a petition under oath setting forth the nature and amount of damages suffered, determine and enter judgment in favor of the party who was injured by such temporary restraining order or preliminary injunction for the damages which the party suffered as a result thereof, which judgment may be enforced as other judgments for the payment of money. However, a failure so to assess damages as hereinabove set out shall not operate as a bar to an action upon the injunction bond." 735 ILCS 5/11—110 (West 1994).

The dissolution of a temporary restraining order at the conclusion of a hearing on a preliminary injunction does not constitute a determination that the temporary restraining order was wrongfully entered. *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535, 542-43, 447 N.E.2d 288, 293 (1983); *Hirschauer v. Chicago Sun-Times*, 192 Ill. App. 3d 193, 200, 548 N.E.2d 630, 635 (1989). It is generally accepted, even though it is not expressly stated in section 11—110, that a prior adjudication that the temporary restraining order was wrongfully issued is a prerequisite to the recovery of statutory damages. *Stocker Hinge Manufacturing Co.*, 94 Ill. 2d at 543, 447 N.E.2d at 293; *Meyer v. Marshall*, 62 Ill. 2d 435, 439, 343 N.E.2d 479, 482 (1976); *Hirschauer*, 192 Ill. App. 3d at 200, 548 N.E.2d at 635.

■ Here, the parties also dispute the standard of review to be applied in the instant case. Keller asserts that we should review the matter *de novo*, as was done in *Hirschauer*. In *Hirschauer*, our colleagues on the First District Appellate Court found that a temporary

restraining order, which precluded the defendant newspaper from ceasing to sell papers to the plaintiff distributor, was improperly issued without notice to the defendant, in the absence of a showing of irreparable harm to the plaintiff before notice could be given. However, in *Hirschauer*, the reviewing court had to determine whether the temporary restraining order was wrongfully issued, because the trial court did not make such a determination. *Hirschauer*, 192 Ill. App. 3d at 200-01, 548 N.E.2d at 635. In contrast, in the present situation, the trial court made a determination that the temporary restraining order was not wrongfully issued. Nevertheless, Keller maintains that the trial court applied the wrong test when it concluded that plaintiff did not use bad faith or fraud in obtaining the temporary restraining order, and that, therefore, we should review the matter *de novo*. Our review of the order, however, indicates that the trial court applied the proper standard.

The trial court concluded, "Arguably the plaintiff met all the requirements for a TRO at the time he obtained it." We conclude that the trial court properly reviewed the matter and concluded that the temporary restraining order was not wrongfully issued. It is well settled that a grant or denial of a temporary restraining order is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Stocker*, 94 Ill. 2d at 541, 447 N.E.2d at 291.

■ Under section 11—101 of the Code, a temporary restraining order may be obtained without notice to the adverse party only if "it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." 735 ILCS 5/11—101 (West 1994). A party seeking a preliminary injunction or a temporary restraining order is not required to make a case which would entitle him to relief on the merits. Instead, he is required only to show that he raises a "fair question" about the existence of that right and that the trial court should preserve the status quo until the case can be decided on its merits. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382, 483 N.E.2d 1271, 1275 (1985).

■ Contrary to Keller's assertions, it appears from the record before us that the pleadings raise a "fair question" as to plaintiff's right to relief. First, plaintiff's bid was nearly $70,000 lower than Keller's bid. Second, plaintiff had been the successful bidder on over 60 other projects with the Port District and had apparently completed all such contracts on time. Third, members of the Peters family publicly opposed the underlying rail loop project and had sought

modifications to the project. Consequently, the Port District's contention that plaintiff was unwilling to complete the project in a timely and efficient manner would appear subject to some dispute.

We also find it important that plaintiff sent a letter to the Port District, dated January 26, 1995, in which plaintiff protested the award to Keller and requested that no notice to proceed with work be issued to Keller until the protest was resolved. Despite this notice and the fact that the disagreement was not resolved, Keller proceeded with the project. A copy of the January 26, 1995, letter was attached to plaintiff's complaint for injunction and temporary restraining order. As Keller points out, the critical inquiry into determining whether a temporary restraining order should be issued without notice to the adverse parties is whether during the period it takes to give such notice the opponent will take measures to destroy the substance of the litigation or obstruct the court in some way from dealing effectively with the issues (*G&J Parking Co. v. City of Chicago*, 168 Ill. App. 3d 382, 387, 522 N.E.2d 774, 777 (1988)) and whether proper notice might have averted litigation by promptly testing the validity of injunctive relief. *Boltz v. Estate of Bryant*, 175 Ill. App. 3d 1056, 1065, 530 N.E.2d 985, 991 (1988). Here, the trial court was faced with a situation in which plaintiff had notified the Port District of its grievance almost two months prior to the time it sought the temporary restraining order, but the parties had been unable to resolve their differences. Meanwhile, construction on the spur project continued. Under these circumstances, it cannot be said that the temporary restraining order was in fact wrongfully issued.

We note that when the trial court entered the temporary restraining order, it scheduled a hearing only six days later so defendants would have an opportunity to respond without waiting the full 10 days for the temporary restraining order to expire. While we are mindful that an *ex parte* temporary restraining order is indeed an extraordinary remedy which can cause considerable damage to a defendant, the record here discloses an actual controversy between the parties. The record also supports the trial court's determination that an award of damages was not appropriate.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

KUEHN, J., concurs.

JUSTICE CHAPMAN, dissenting:

I disagree with the majority that the plaintiff was absolved from serving the parties with notice. Granting injunctive relief without notice is an extraordinary remedy and is appropriate only under the most extreme and urgent circumstances. *Board of Education of Community Unit School District No. 101 v. Parlor*, 85 Ill. 2d 397, 401, 424 N.E.2d 1152, 1153 (1981). To grant such relief without notice to the adverse party, it must clearly appear from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. 735 ILCS 5/11—101 (West 1994). The critical inquiry in determining the propriety of an injunction without notice is whether in the minutes or hours necessary to procure defendant's appearance defendant could and would take such action as to seriously obstruct the court from dealing justly and effectively with the issues in dispute. *Board of Education of Community Unit School District No. 101 v. Parlor*, 81 Ill. App. 3d 667, 670, 402 N.E.2d 388, 390 (1980), *aff'd*, 85 Ill. 2d 397, 424 N.E.2d 1152 (1981).

Plaintiff's verified complaint states, "[If injunctive relief is not granted,] [plaintiff] will lose the substantial cost of preparing the bid, loss of profits from the project, loss of sales to pay overhead and incalculable damage to its professional reputation for submitting a bid wrongfully found to be 'unresponsive' by the Tri-City Regional Port District." The pleadings do not indicate how the plaintiff would be irreparably injured by notifying the defendants of the hearing. There is no allegation that "during the period it takes to give notice, the opponent will take measures as to destroy the substance of the litigation or otherwise obstruct the court from dealing effectively with the issues." *G&J Parking Co. v. City of Chicago*, 168 Ill. App. 3d 382, 387, 522 N.E.2d 774, 777 (1988).

Finally, I disagree with the majority's conclusion that notice was not required because the Port District had previously been informed of the plaintiff's grievance. Notice of the grievance does not equate with notice of an injunction. Moreover, according to plaintiff's complaint, Keller Construction is an Illinois firm with principal offices in Madison County. Thus, there is nothing in the record to suggest that plaintiff could not have easily notified Keller.

Because nothing in the record supports a finding that notice did not have to be given, I would find that the temporary restraining order was wrongfully issued. I would further find that Keller is entitled to damages under section 11—110 and remand this case to the trial court for a determination of the amount of damages incurred by Keller.