2022 IL App (4th) 220720

NO. 4-22-0720

FILED
August 26, 2022
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| LORI QUIGG, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Morgan County |
| MOHAMMED SALEEM, REBECCA L. STOCKER, | ) | No. 22LA13 |
| and QUIGG ENGINEERING, INC., an Illinois | ) | |
| Corporation, | ) | |
| Defendants | ) | Honorable |
| | ) | John M. Madonia, |
| (Mohammed Saleem, Defendant-Appellant). | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment and opinion.

**OPINION**

¶ 1 On August 1, 2022, plaintiff, Lori Quigg, filed a verified complaint and motion for preliminary injunction against defendants, Mohammed Saleem, Rebecca L. Stocker, and Quigg Engineering, Inc., seeking (1) a declaratory judgment that Saleem had breached the terms of a stock sale agreement with Quigg and (2) injunctive relief pursuant to the terms of that agreement. Two days later, on August 3, 2022, Quigg made an oral motion for a temporary restraining order (TRO) without notice to defendants. The trial court granted the motion and entered a TRO.

¶ 2 Subsequently, Saleem filed a motion to dissolve the TRO. The trial court conducted a hearing on that motion on August 16, 2022, denied it, and ordered the TRO to remain in effect until a preliminary injunction hearing or a full trial on the merits could be conducted.

¶ 3 Saleem appeals, arguing, among other things, that the trial court erred by entering

the TRO without notice. We agree, reverse, and remand for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5            On August 1, 2022, Quigg filed a verified complaint and a motion for a preliminary injunction. Quigg's complaint alleged that she had entered into a stock sale agreement with Saleem for the sale of her 90% interest in Quigg Engineering, Inc. (QEI). Quigg owned 90% of QEI's shares, and Stocker owned the remaining 10%. They both agreed to sell their shares to Saleem for a total of roughly $8 million. Quigg and Stocker financed the purchase by retaining their shares as collateral until Saleem paid in full. Under the terms of the agreement, upon its execution, Saleem became the sole owner of QEI.

¶ 6            Quigg's complaint also alleged that Saleem had breached the stock sale agreement in multiple ways, including (1) making late payments, (2) failing to provide adequate documentation, and (3) defaulting on an operational loan from the Bank of Springfield. Quigg's complaint further alleged, "on information and belief," that Saleem had been telling QEI's clients (mainly the Illinois Department of Transportation and other governmental bodies) that QEI could not perform its government contracts and he intended to close the business. Quigg maintained that, as the primary shareholder, she would be irreparably injured if Saleem were not enjoined from operating the business as he was.

¶ 7            Quigg further alleged in her verified complaint that "[i]n response to communications by Quigg either directly or through her attorneys to Saleem and/or his attorneys, Saleem has denied that he is in breach of his agreements with Quigg."

¶ 8            On August 3, 2022, the trial court conducted a hearing at Quigg's request for a TRO without providing notice to Saleem. Quigg made an oral motion for a TRO and personally appeared to give testimony to the trial court in lieu of an affidavit in support of her motion.

¶ 9        The trial court granted the motion and entered a TRO preventing Saleem from changing any of the standard operations of the company in place prior to the filing of the complaint. In its order, the court wrote the following:

> "Plaintiff has shown through sworn testimony that there is a strong probability that serious further irreparable damage to Quinn [*sic*] Engineering, Inc. will occur if notice is served prior to a hearing on Plaintiff's Motion for Temporary Restraining Order, which harm to the company directly harms Plaintiff's collateral and irreversibly affects continued functioning of the business, specifically, the company stands to experience payroll lapses affecting dozens of employees, disruptions in their current contracts for public service, and potentially irrecoverable corporate funds from misappropriation that will be caused by unpreventable contract breaches if a TRO is not granted as requested."

¶ 10        On August 9, 2022, Saleem filed a motion to dissolve the TRO, arguing (1) notice could have and should have been provided before the trial court conducted a hearing on Quigg's request for a TRO, (2) the trial court applied the incorrect standard, (3) Quigg's verified complaint failed to make an adequate showing she was entitled to relief, and (4) the court should have required bond.

¶ 11        On August 16, 2022, the trial court conducted a hearing on the motion to dissolve. At the hearing, Saleem also argued that the court erred by considering oral testimony from Quigg because the statute required an affidavit or verified complaint. Regarding the *ex parte* hearing, Quigg's counsel told the court

> "We came in, if you will recall, and said that right after we gave notice of the filing of the complaint and the Motion for Prelim[inary injunction], all of a sudden things

started in our view to unravel. *** We needed to stop something now or else there was going to be harm and it was going to change literally the *status quo* before we could even get to a Preliminary."

Quigg's counsel made a few similar statements concerning "dramatic changes to the company which basically were materially and adversely affecting the ability of this company to operate." However, counsel did not provide any specifics.

¶ 12　　　　After a long discussion, the trial court expressed its dissatisfaction with the procedural posture of the case and the representations made to it at the TRO hearing. In particular, the court noted it apparently misapprehended the nature of the allegations made at the TRO hearing and the relief the court, in fact, granted. The court further acknowledged it should not have considered oral testimony. Ultimately, however, the court concluded that, relying solely on the verified complaint, Quigg had made an adequate showing for a TRO without notice and the TRO was necessary to preserve the *status quo* until a preliminary injunction hearing. The court ordered the TRO to remain in effect until October 4, 2022, when it would conduct either (1) a preliminary injunction hearing or (2) a full trial on the merits of the complaint.

¶ 13　　　　This appeal followed.

¶ 14　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　　　Saleem appeals, arguing, among other things, the trial court erred by entering the TRO without notice. We agree and reverse and remand for further proceedings.

¶ 16　　　　When reviewing a trial court's entering a TRO without notice, the appellate court considers two separate issues: (1) whether the trial court abused its discretion by entering a TRO and (2) whether the trial court erred by entering the TRO *without notice*. In this case, we address only the second issue and conclude that nothing in the record supports a showing that notice could

- 4 -

not have been given. Because our conclusion that the trial court erred by entering the TRO without notice is dispositive of this appeal, we need not and do not address whether Quigg could have or did establish the other elements for granting a TRO.

¶ 17                                    A. The Applicable Law

¶ 18            A trial court cannot enter a TRO without notice to the adverse party "unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon." 735 ILCS 5/11-101 (West 2020). "Injunctive relief without notice is an extraordinary remedy appropriate only under the most extreme and urgent circumstances." *Hirschauer v. Chicago Sun-Times*, 192 Ill. App. 3d 193, 201 (1989). "The critical inquiry in all cases of this nature is whether, during the period it takes to give notice, the opponent will take such measures as to destroy the substance of the litigation or otherwise obstruct the court from dealing effectively with the issues." *G&J Parking Co. v. City of Chicago*, 168 Ill. App. 3d 382, 387 (1988); see also *Board of Education of Community Unit School District No. 101 v. Parlor*, 81 Ill. App. 3d 667, 669 (1980) (describing the "critical inquiry" as "whether in the minutes or hours necessary to procure defendant's appearance, defendant could and would take such action as to obstruct seriously the court from dealing justly and effectively with the issues in dispute"), *aff'd*, 85 Ill. 2d 397 (1981).

¶ 19            "Notice and the right to be heard *** is at the bedrock of our system of jurisprudence." *Hill v. Village of Pawnee*, 16 Ill. App. 3d 208, 209-10 (1973). "[S]ome notice, however informal, is greatly to be preferred to none at all." (Internal quotation marks omitted.) *Nagel v. Gerald Dennen & Co.*, 272 Ill. App. 3d 516, 521 (1995) (collecting cases). As little as 30 minutes notice, provided by telephone, has been held to be sufficient. *American Warehousing*

*Services, Inc. v. Weitzman*, 169 Ill. App. 3d 708, 715 (1988). Such informal notice is particularly required when the parties or their attorneys are familiar with one another, have engaged in discussions, and are able to appear in court within minutes. See, *e.g.*, *Hawthorne Bank of Wheaton v. Village of Glen Ellyn*, 154 Ill. App. 3d 661, 671 (1987); *Parlor*, 81 Ill. App. 3d at 670-71. "[W]hen an injunction is issued without notice in a case where notice should have been given, this court will reverse the order upon that ground without regard to any other question." (Internal quotation marks omitted.) *Hill*, 16 Ill. App. 3d at 211 ("While the record reveals that the pleadings contained allegations to support the issuance of a preliminary injunction with notice and with bond, it does not support the issuance of the interlocutory relief sought without notice to defendant."); see also *G&J Parking Co.*, 168 Ill. App. 3d at 387-88.

¶ 20                                B. This Case

¶ 21        Here, Quigg's verified complaint confirmed that the parties, *and their attorneys*, had been in discussions about (1) whether Saleem had breached the agreement and (2) who was in control of QEI. In addition, the copies of the documents comprising the stock sales agreement, which were attached to the complaint, required the parties to give notice of any breach and listed the parties' attorneys.

¶ 22        In his brief on appeal, Saleem represents that the parties' attorneys were engaged in discussions about the subject matter of the lawsuit at the time the complaint was filed. Notably, Quigg does not challenge or address this representation. It appears Saleem's Springfield counsel, his counsel in the trial court and on appeal, filed Saleem's motion to dissolve on August 9, 2022, and may have been involved in the case earlier. If this is true, we take judicial notice of the fact that the office of Saleem's counsel is located just a few blocks from the Sangamon County courthouse where the oral motion for TRO was heard. (We note that the TRO hearing occurred in

- 6 -

Sangamon County because the trial court's docket in Morgan County could not accommodate the emergency hearing.) But even if Quigg communicated only with Saleem's Chicago attorneys, who were designated in the stock sales agreement, no excuse exists to not make a phone call and attempt participation remotely. These circumstances suggest a reasonable probability that Saleem's counsel could have appeared at the hearing at which Quigg requested a TRO within mere minutes of receiving notice. See *Weitzman*, 169 Ill. App. 3d at 715 (holding 30 minutes' notice by phone was sufficient because (1) the defendant's attorney could have attended the hearing and (2) the plaintiff "faced *** imminent disruption of its business operations"). Under these circumstances, the trial court erred by not requiring or attempting at least informal notice such as a phone call prior to issuing its TRO.

¶ 23        We acknowledge that a case could exist in which a plaintiff seeking a TRO would be able to show that providing notice to a defendant would probably result in the destruction of the object of the litigation. However, that is clearly not this case. Nothing in this record comes close to supporting such a showing. Indeed, the verified complaint details allegations of breach dating back months. Even the allegations related to defaulting on a bank loan for daily operating expenses stem from a June 2022 notice from the bank.

¶ 24        Quigg argues that the trial court's TRO sufficiently details the factual averments that necessitated conducting a hearing without notice. However, the TRO merely recites conclusory allegations from the complaint of the potential harms Quigg believed would occur without a TRO. Nowhere in the complaint, TRO, or report of proceedings does Quigg set forth factual allegations explaining why providing notice to Saleem's attorneys, who were either less than a 10-minute walk away or available by phone, threatened to destroy QEI or its value. At most, Quigg's counsel provided vague opinions that "things started in our view to unravel" and there

were "dramatic changes" that "materially and adversely" affected the company and "all of the sudden things were like instantaneously failing [*sic*] apart."

¶ 25 Saleem raises several other grounds he claims support a reversal of the TRO. However, we express no view on them. Our holding is limited to Quigg's failure to provide notice.

¶ 26 We note that the party seeking a TRO without notice cannot rely on subsequent proceedings to overcome a lack of specificity of factual allegations showing that immediate and irreparable injury will occur in the minutes or hours it takes to provide notice and conduct a hearing. Whether a TRO was properly granted without notice presents a binary question; the allegations of the affidavits or verified complaint either provide sufficient factual detail to make the statutory showing or they do not. If the TRO hearing without notice is deficient, nothing presented thereafter can overcome that deficiency. Similarly, a trial court cannot rely on information learned after issuing the TRO without notice to excuse its error in granting that TRO.

¶ 27 We recognize that this is a harsh rule. However, Illinois law makes clear that granting a TRO without notice is an extraordinary remedy and disfavored in all but the most extreme and urgent circumstances. *Parlor*, 81 Ill. App. 3d at 669; *G&J Parking Co.*, 168 Ill. App. 3d at 387; *Nagel*, 272 Ill. App. 3d at 520. Given this context and the difficulty in obtaining timely appellate review, reviewing courts will not tolerate the reliance on evidence presented after a TRO has been issued to excuse a plaintiff's failure to make an adequate showing in the first instance.

¶ 28                                III. CONCLUSION

¶ 29 For the reasons stated, we reverse the trial court's judgment and remand for further proceedings.

¶ 30 Reversed and remanded.

| **Decision Under Review:** | Appeal from the Circuit Court of Morgan County, No. 22-LA-13; the Hon. John M. Madonia, Judge, presiding. |
|---|---|
| **Attorneys for Appellant:** | David P. Hennessy and Dylan P. Grady, of Brown, Hay & Stephens, LLP, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Howard W. Feldman and Stanley N. Wasser, of Feldman Wasser, of Springfield, for appellee. |